PROVOSTY, J.
The plaintiff railroad company sues to set aside, as unreasonable and unjust, an order of the Railroad Commission requiring it to operate two additional trains daily between Natchitoches and Cypress. Natchitoches is a town on the plaintiff company’s branch road going to Shreveport, and Cypress is the station on the main line where the branch road connects with the main line. The distance between the .two is 10 and a fraction miles. There are already on the branch two trains daily. They connect with the day trains on the main line. The order in question requires two more trains daily to be put on, to connect with the two night trains on the main line.
The reason assigned for the order is that passengers who desire to take or who arrive by the night trains must wait several hours at Cypress, and that the accommodations there are worse than poor. The plaintiff contends that the service now being rendered is adequate, and that this additional service is unnecessary, and would occasion a loss of from $10,000 to $15,000 a year to the railway company, without a corresponding benefit to the public, and that the said order is therefore unreasonable and unjust.
The order was made on October 13, 1909, and the case was tried in the- lower court in January, 1910.
Plaintiff introduced in evidence several exhibits, showing its passenger business to and from Natchitoches for several years back, and showing, also, what would be the probable cost of this additional service.
The first of these exhibits shows what was the passenger business from and to Natchitoches over the plaintiff company’s road dur *390 ing the years 1904, 1905, 1908, 1907, and 1908, together with the number of miles traveled by the passengers and the revenue derived from the passenger traffic. The average for this period of five years was, per year, 39,-566 passengers, yielding a revenue of $38,-701.45; each passenger traveling 39.1 miles, and paying a fare of 98.1 cents.
Another exhibit shows what was the passenger traffic over the plaintiff company’s road during the year ending July 31, 1909. It shows that the total number of passengers who left Natchitoches was 16,890; that of this number 10,176 traveled only on the branch road, and did not go on the main line at all, so that only 6,714 traveled on the main line; that of that number only 792 took the night trains — in other words, that the night trains carried an average of 2.17 passengers per day coming from Natchitoches. The exhibit shows, further, that 16,-788 passengers traveled to Natchitoches. The exhibit does not show how many of these traveled on the night trains; but, in view of the fact that the total number traveling from Natchitoches, viz., 16,890, was approximately the same as the total number traveling to Natchitoches, the inference is legitimate that approximately the same number traveled to Natchitoches on the night trains as traveled from, to wit, 792, or an average of 2.17 passengers daily.
Another exhibit shows the distance that was traveled by the 16,890 passengers carried by plaintiff from Natchitoches during the year ending July, 1909, and shows that 94 per cent, of these passengers went to points less than 100 miles from Natchitoches; that is to say, were presumably day passengers, since the day trains are ordinarily used for a short distance. This would leave 890 for the night trains, a number approximating the 792 shown by the other exhibit.
If we-adopt the higher of these figures, we find that about 1,800 passengers traveled to and from Natchitoches more than 100 miles, or presumably on the night trains, during 1909.
Doubling these figures, for greater safety of computation, we have 3,600 passengers using the night trains, or an average of about 10 a day — 5 in and. 5 out
The average fare from Natchitoches to Cypress is 25 cents. The total revenues, then, from the 3,600 passengers would be $900.
The evidence shows that the expense of this additional service would be $11,349.95 a year; that, therefore, the plaintiff company would carry each passenger at a net loss of $2.90, and would furnish the service at a net yearly loss of $10,549.95. The defendant does not admit the correctness of these figures. In the first place, says defendant, they have not been taken directly from the books of the plaintiff company, but from a so-called “financial exhibit”; then there are a great many cash fares from Natchitoches to Cypress, which do not figure on said exhibits; and, moreover, the night travel will largely increase just as soon as the said night service is established, it having been kept down heretofore by the inconvenience of having to wait at Cypress for the night trains in the case of those going, and for the next day train in the case of those arriving.
The financial exhibit in question, from which the exhibits offered by plaintiff were made out, is shown to be a compilation of what appears on the books, and to form part of the plaintiff company’s system of bookkeeping, and that the reports which the plaintiff company is required by law to- make to the Interstate Commerce Commission and to the Railroad Commissions of the states of Texas and Louisiana are compiled from it. We fail entirely to see why these figures in the exhibits offered in evidence should be any the less reliable from having been taken from a compilation from the books, instead of directly from the books themselves, assuming that the compilation has been made *392 in good faith and by competent persons, as is shown to have been the case with the financial exhibit in question.
Doubtless the number of passengers may-have been greater than is shown by these exhibits. There may have been cash fares that were not accounted for, and in other w"ays the books of the- company may 'fail to show the exact number of passengers; but the necessary margin to cover this difference has been more than allowed when the total number of passengers shown by the books has been doubled for the sake of being on the safe side.
Defendant also questions the estimate made by plaintiff of the probable expense of this additional service. We find no reason for not accepting the said estimate as sufficiently correct to serve the purposes of This case.
The Attorney General, who appears herein for the defendant Railroad Commission, urges that all such orders of the Railroad Commission will be presumed to be correct and legal, and that the burden of proof for showing that they are not rests upon the railroad attacking them. That proposition is abundantly supported by authority. But, in our opinion, the plaintiff has fully discharged that burden in this case. We think that, on the facts as found and hereinabove state'd, the order in question in this case is unreasonable and unjust, and therefore illegal.
The learned counsel for plaintiff has argued, and in our opinion demonstrated, that for being illegal, and liable to be set aside by the courts, such an order need not go to the extent of violating the provisions of the federal Constitution for the protection of private property. But we do not understand the learned Attorney General as contending that such an order cannot be set aside unless it violates those provisions of the federal Constitution. All that we understand him as contending is that the fact that the extra service can be rendered by the railroad company only at a loss is not the sole criterion, or, indeed, the most important consideration, but that the true criterion and most important consideration is whether or not the public interest requires that the additional service be rendered, provided, always, that the loss to the railroad be not so great as to constitute a greater sacrifice on its part than the public would have the right to expect and demand, or, in other words, ¡ such as would reduce the earnings of its road in Louisiana to an amount below a fair return on the capital invested, etc.
A night service upon this branch would, no doubt, be a great convenience to the people of Natchitoches, and especially to the young lady students of the Normal school located in that town; but so would a night service upon every branch line in the state be a great convenience to the people of the towns along the line.-- We discover no special reason why there should be this night service upon this branch to accommodate so few people.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there be judgment annulling, canceling, and setting aside the order of the Railroad Commission of Louisiana, of date September 30, 1910, by which the Texas & Pacific Railroad Company is commanded and required to operate a passenger train between Cypress, La., and Natchitoches, La., on and after October 15, 1909, so as to make close connection at Cypress, allowing a schedule wait of not more than 30 minutes after its train No. 51, due at Cypress at 3:54 a. m., and its train No. 52, due at Cypress at 11:32 o’clock p. m. and that it should also arrange the schedule so as to leave Cypress, returning to Natchitoches, not more than 30 minutes after the arrival of the said two trains, and that defendant pay all costs.