98 So.2d 189

## TEXAS AND NEW ORLEANS RAILROAD COMPANY

v.

## LOUISIANA PUBLIC SERVICE COMMISSION, Nat B. Knight, Jr., Chairman, et al.

No. 43577.

Nov. 12, 1957.

Jack P. F. Gremillion, Atty. Gen., Carroll Buck and John L. Madden, Special Asst. Attys. Gen., Kenneth C. Banfield, Jr., Special Counsel, Baton Rouge, for defendants-appellants.

Chaffe, McCall, Phillips, Burke & Hopkins, Harry McCall, Jr., New Orleans, for plaintiff-appellee.

HAMITER, Justice.

The Louisiana Public Service Commission and the members thereof (all defendants in this cause) are appealing from a judgment which annulled the Commission's order No. 7133 and granted the application of the Texas and New Orleans Railroad

Company (plaintiff herein) to discontinue the operation of its passenger trains Nos. 3 and 4 (known as "The Acadian") between New Orleans and Vinton (via Lake Charles), Louisiana.

In stating the case the district judge, to quote from his written reasons for judgment dated May 20, 1957, well said: "Two of the passenger trains of the Texas and New Orleans Railroad Company between New Orleans, Louisiana, and Houston, Texas, were designated as train No. 3 going from New Orleans west and train No. 4 going from Houston east. Of the 362.7 miles between the two cities 250.6 were in Louisiana. Last year on the application of the railroad the Texas Railroad Commission permitted the railroad to discontinue the operation of trains 3 and 4 in the State of Texas effective October 1, 1956. The railroad continued the operation of the two trains between New Orleans and Vinton, Louisiana. Vinton is the station in Louisiana on that road nearest the Louisiana-Texas State line. The railroad applied to the Louisiana Public Service Commission for permission to discontinue the operation of these two trains in this State. On a public hearing held November 17, 1956, the Louisiana Public Service Commission denied the application and the railroad is now before this Court for a review of that Order."

◼◼ Applicable to the cause, and about which there appears to be no dispute, are the following legal pronouncements: "* * * it is well settled that the orders of the Public Service Commission, like those of other administrative bodies acting under a delegation of discretionary authority, should be accorded great weight and will not be overturned by the courts in the absence of a clear showing of abuse of power. * * *" Illinois Central R. Co. v. Louisiana Public Service Commission, 224 La. 279, 69 So.2d 43, 47. "A board or commission in deciding what train service shall be provided by a railroad must be guided in its determination by the public convenience and necessity in relation to such service; and where it is sought to discontinue certain service, the controlling criteria are the character and population of the territory served, public patronage or lack thereof, the remaining transportation facilities, the expense of operation as compared with revenue therefrom, and the financial condition of the railroad as a whole." 74 C.J.S. Railroads § 418b(3). See also Texas & P. R. Co. v. Railroad Commission of Louisiana, 127 La. 387, 53 So. 660; Yazoo & M. V. R. Co. v. Railroad Commission of Louisiana, 130 La. 1012, 58 So. 862 and Vicksburg, S. & P. R. Co. v. Railroad Commission of Louisiana, 132 La. 193, 61 So. 199.

Recognizing these principles appellants contend that the district court erred (1) in failing to give proper consideration to public need, demand and necessity in passing

upon the Commission's order, (2) in evaluating the financial losses entailed in operating trains Nos. 3 and 4 and failing to appraise them from a realistic standpoint, and (3) in failing to give sufficient weight to the increase in freight rates as a compensating factor in offsetting a major part of the railroad company's operating losses.

With respect to the first contention the evidence adduced at the Commission hearing cannot support a finding of public demand and neccessity for a continuance of the passenger service in question. To the contrary it discloses that during October, 1956 (a normal operating month and the one immediately preceding the date of the hearing) the average load per day for both trains was 8.01 passengers, this including persons who got on and off at the various way stations (twenty-eight in number) and travelled short distances. Specifically, during that month, train No. 4 accommodated one passenger on each of two days and none on each of two other days. This paucity of patrons can well be understood when we consider the following factor referred to by the trial judge and disclosed by the record: "* * * there are other means of passenger transportation as indicated by Mr. Bell's testimony where he shows that only 3% of the passengers leaving the City of Lake Charles by public transportation in the month of September 1956 went by railroad. At that time these two trains were being operated all the way between New Orleans and Houston. * * *."

Besides, only one witness testified that the trains were needed, and he was interested merely in the carrying of mail from the City of Franklin, Louisiana, to Houston, Texas. Indeed, the Commission itself made no finding of necessity; its order (as the reasons therefor indicate) appears to have been predicated solely on a belief that plaintiff's increased freight rates adequately compensated for losses sustained in rendering the passenger service.

On the question of financial loss in the operation of "The Acadian", the trial judge correctly found and observed: "* * * These trains for the month of October 1956 between New Orleans and Vinton, Louisiana, brought in a total revenue of $17,783.70, against a direct expense for that month of $27,417.44 or a net loss of $9,633.74 for that month alone. Extending this loss for the month of October as an average for twelve months the net loss for twelve months would amount to $115,604.88. The undisputed evidence showing the small number of passengers through the month of October 1956 and the direct loss of nearly $10,000 for that month does not indicate any reasonable demand for or use of these trains on the part of the public."

In fact, the brief of defense counsel states: "The evidence adduced at the hearing * * * does reflect financial loss

suffered by the railroad company in operating the two trains; * * *." And the evidence, consisting primarily of the testimony of plaintiff's assistant general manager based on the company's records, fully supports the mentioned finding. Moreover, it shows that the losses were unavoidable and that plaintiff has made every effort to reduce them.

True, a representative of the Brotherhood of Railroad Trainmen furnished testimony in contradiction of the company's asserted loss. But the judge properly gave it no weight because it was based wholly on hearsay.

The third contention of appellants is likewise untenable. The record contains no evidence relating to increased freight rates or to any compensating by them for losses sustained in passenger operations. Secondly, even if the plaintiff company as a whole operates at a profit the losses occasioned by the passenger service in question is so out of proportion to the public demand and necessity therefor that a discontinuance is clearly warranted (the trial judge termed such service "economic waste").

■ Accordingly, we are forced to conclude that the assailed order No. 7133 was unsupported by the evidence adduced at the Commission hearing and that the district judge ruled correctly when annulling it.

For the reasons assigned the judgment appealed from is affirmed.