106 So.2d 438

**TEXAS AND NEW ORLEANS RAILROAD COMPANY**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION et al.**

No. 44042.

Nov. 10, 1958.

Jack P. F. Gremillion, Atty. Gen., George M. Ponder, First Asst. Atty. Gen., Kenneth

C. Banfield, Jr., Sp. Asst. to Atty. Gen., William C. Bradley, Sp. Counsel to Atty. Gen., for defendants-appellants.

Chaffe, McCall, Phillips, Burke & Hopkins, New Orleans, for plaintiff-appellee.

Breazeale, Sachse, Wilson & Hebert, Baton Rouge, amicus curiae in support of plaintiff-appellee.

PONDER, Justice.

This is an appeal by the Louisiana Public Service Commission, and the members thereof, from a judgment of the district court reversing, annulling, and setting aside the order of the Louisiana .Public Service Commission denying the Texas & New Orleans Railroad Company's application *for authority to discontinue operation of* its agency station at Longstreet, Louisiana.

The Texas & New Orleans Railroad Company, hereinafter referred to as the railroad, made application to the Louisiana Public Service Commission, hereinafter referred to as the Commission, for authority to discontinue and close its agency station at Longstreet, Louisiana, on the grounds that "it (the railroad) has experienced a deficit in the maintenance of the Longstreet agency during the years, 1955 and 1956, thereby imposing a drain upon its finances which are needed for the rendition of adequate and efficient service elsewhere upon its line." The railroad further alleged that traffic can be handled by the agency stations at Keatchie and Logansport on either side of Longstreet and was so handled when the agency station at Longstreet was closed on several occasions due to the shortage of agents and telegraphers.

To this application, a petition of intervention was filed on behalf of the Village of Longstreet and various individuals, opposing the application on the grounds that the Longstreet station shows a profit to the railroad and "that the volume of business done in and through the said depot or station at Longstreet and the revenues derived therefrom by the railroad company justifies the continuance of said depot or station as a regular agency station and the discontinuance of such operations of said depot or station with the attendant hardships on the citizens and business interests of the community would be unreasonable."

After hearing, the Commission denied the railroad's application concluding: "In view of the fact that the agency does not constitute a drain upon the railroad's revenues as alleged in the petition, and in further view of the need of the agency as expressed by local citizens and by the Town of Longstreet, we find no justification for the closing of the Longstreet Agency * * *."

The railroad brought action in the district court to have the order of the Commission set aside and after trial the district court annulled and set aside the order of the Commission and the application of the railroad was granted ordering the discon-

tinuance of the Longstreet Station as an agency station. No written reasons were given by the district judge.

The Commission appealed to this Court contending that rulings of the Public Service Commission, like those of other administrative bodies acting under a delegation of discretionary authority, are entitled to great weight and will not be disturbed in the absence of a clear showing of abuse of power. Citing Gulf States Utilities Co. v. Louisiana Public Service Commission, 222 La. 132, 62 So.2d 250; Illinois Central R. Co. v. Louisiana Public Service Commission, 224 La. 279, 69 So.2d 43. As error, the Commission contends that the lower court failed to give proper consideration to public need, demand, and necessity and failed to give proper consideration to the fact that the agency station at Longstreet was contributing to the net operating revenues of the railroad and in fact showing a profit.

It is the contention of the railroad that the closing of the station would conserve expenses which are unnecessary, and that the revenues can be produced without the expense of the maintenance of the agency station at Longstreet, hence if there is no public need for continuation the expense is a drain upon appellee's revenues.

Evidence adduced at the hearing before the Commissioner shows that in 1955 a net contribution to the net revenues of the railroad by the Longstreet station was $2,-186.58 and in 1956 the net contribution was $1,331.61. The exhibits introduced by the railroad show that in 1955 the total cost of handling freight at Longstreet was $15,821.34 (included in which is the station cost of $3,936.12) and the revenues accruing amounted to $18,007.92. In 1956 the total cost of handling freight was $12,-215.51 (of which $3,274.42 was the cost of the station) and the revenues were $13,-547.12.

Mr. C. W. Rush, Assistant Superintendent, Houston Division of the railroad testified that there is not enough business to justify the operation of the station since freight could be handled at the adjoining stations of Keatchie, 6.7 miles to the North, and Logansport, 9.5 miles to the South simply by a long-distance call which would be paid for by the railroad. He testified that because of the shortage of telegraphers the agency at Longstreet was closed from August 21st to August 31st in 1956; from September 1st to September 30th in 1956; from October 1st to October 21st in 1957; from November 3rd to November 5th, 1956 and from November 10th to November 30th, in 1956 and on another occasion due to the vacation of the agent, all with no complaint from the people or difficulty on their part. Mr. Rush gave as reason for the application by the railroad that the Longstreet agency was not an economical operation.

Mr. F. J. Reeves, Head of the Appropriation Department, Houston, Texas, of the railroad testified that the basis of the application is not the out-of-pocket expenses, because there are none, but "To conserve expenses which are unnecessary in this case wherein the business can be handled at the adjacent stations in view of the need for conserving our expenses in the operation."

Thus from the evidence it is apparent that the railroad is making a small profit on the agency at Longstreet but that the profit could be made from the adjoining stations without the expense of the maintenance of the agency at Longstreet.

The evidence introduced to show necessity for the agency station is very meager. It boils down to simply a question of inconvenience in that a long-distance telephone call would have to be made. It was sought to be proved that because of oil development there is a possibility that freight shipments would be increased but this is merely conjecture. Mr. Bagley testified that the difficulty is in the inconvenience of making a telephone call.

Technically the railroad alleged in its application that "it had experienced a deficit in the maintenance of the Longstreet agency during the years 1955 and 1956, thereby imposing a drain upon its finances which are needed for the rendition of adequate and efficient service elsewhere upon its line." This is not accurately supported by the evidence in the record since the exhibits show (and it is admitted by the railroad's two witnesses) that there has been a small profit in these two years.

On the question of the necessity and need for the station, the evidence shows that the freight can be adequately handled at the adjoining stations, the only result being inconvenience to the residents of Longstreet in making a telephone call.

Recently this Court in the case of Texas & New Orleans R. Co. v. Louisiana Public Service Commission, 233 La. 787, 790, 98 So.2d 189, 190 (in deciding that a train service was no longer necessary) laid down the general rule in regard to *discontinuance of a line by a railroad* thus:

" 'A board or commission in deciding what train service shall be provided by a railroad must be guided in its determination by the public convenience and necessity in relation to such service; and where it is sought to discontinue certain service, the controlling criteria are the character and population of the territory served, public patronage or lack thereof, the remaining transportation facilities, the expense of operation as compared with revenue therefrom, and the financial condition of the railroad as a whole.' 74 C.J.S. Railroads § 418b(3). See also Texas & P. R. Co. v. Railroad Commission of Louisiana, 127 La. 387, 53 So. 660; Yazoo & M. V. R. Co. v.

Railroad Commission of Louisiana, 130 La. 1012, 58 So. 862 and Vicksburg, S. & P. R. Co. v. Railroad Commission of Louisiana, 132 La. 193, 61 So. 199."

In that case the evidence showed a financial loss which is unlike the case under consideration.

■ Although the facts in the above quoted case are different the general rule as laid down therein is the criterion.

It was testified to in the present case that the primary out-bound shipments at Longstreet are pulpwood with an occasional shipment of poles. The contractors load the pulpwood and place their orders for cars at Logansport, Keatchie, or Longstreet. There was no shipment of poles in 1955 and three in September, October, and December of 1956. See page 4 of Transcript. As to the "less carload to Longstreet" it is handled by the Southern Pacific Transport in trucks and the drivers deliver their freight to the consignees at Longstreet directly from the truck. Other truck lines serving Longstreet are Red Ball, Herrin and East Texas. The only inbound traffic at Longstreet was a few carloads of fertilizer and some gravel (about 13 cars) for the Parish. Some pipe was shipped in, one car in November and 12 cars in December.

According to the exhibit introduced in the record, if the station was discontinued, the railroad would have saved $3,936.12

in 1955 and $3,274.42 in 1956 and it is urged that the revenues would have been the same since the traffic would be taken care of at adjoining stations. The revenue in 1955 was $18,007.92 and in 1956 the revenue was $13,547.12.

As a whole then the testimony is to the effect that although there is a slight profit it is not enough to justify the operation of the station. There was no testimony offered as to the financial condition of the railroad as a whole.

■ The rule in regard to discontinuance of an agency station is found in 74 C.J.S. Railroads § 402c(2), page 962, viz.:

"Whether or not a railroad may properly be entitled to discontinue an agency at a station generally depends on the facts of the particular case and ordinarily the test employed in determining the matter, where an absolutely necessary service is not involved, is whether the public good derived from maintenance of the agency station outweighs the expense to the railroad in continuing such agency."

In the discussion under this paragraph, the following is found:

"The circumstances to be taken into consideration are the volume of business done at the station, its proximity to other stations, the accessibility thereof, the cost of maintaining such agency station, the financial loss, if

any, to the railroad company, due regard for the welfare of the public, and the probabilities of future development. * * * Broadly speaking, the railroad is under no duty to provide an agent at a station where the volume of business is not sufficient reasonably to demand the services of such an employee, * * * and in connection with an application for discontinuance it is unreasonable to require the maintenance of an agency station where the cost of the service is out of proportion to the revenue derived from the portion of the public benefited thereby, particularly where a substitute service may be provided affording the same essential, although less convenient, service."

In the case of Louisiana Ry. & Nav. Co. v. Railroad Commission of Louisiana, 146 La. 609, 83 So. 849, 850, the Railroad Commission ordered the plaintiff railway company to erect a depot and maintain an agent in charge. On appeal, the district court maintained the orders and this Court reversed the judgment saying: "No doubt, the convenience of a good many persons of the neighborhood would be subserved by an agency at this point, but these persons are not so numerous or the traffic so great as to require an agency to be

maintained so close to the other already existing agent station in both directions." In the body of the opinion it is shown (with other facts and figures) that the cost of this agency would be about $1,700 a year, whereas the total revenue for the year 1917 was $2,800.47.

While it is true that the orders of the Commission are entitled to great weight and the burden is on the railroad to show the invalidity of the orders of the Commission, if the findings and conclusions of the Commission do not conform to the law and are not supported by the evidence, so that the order of the Commission is unreasonable, the court may reverse or vacate such order.

The record as a whole reflects that there is no necessity for an agency station at Longstreet and the small profit does not justify the expense incurred by the railroad. Further it is manifestly shown that the traffic can be adequately taken care of at Keatchie or Logansport with only the inconvenience of a long distance telephone call, paid for by the railroad. The record shows that the amount of traffic at the Longstreet station does not justify its continuance.

For the reasons assigned, the judgment is affirmed.