124 So.2d 899

### LOUISIANA & ARKANSAS RAILWAY COMPANY

v.

### LOUISIANA PUBLIC SERVICE COMMISSION.

No. 44631.

Dec. 12, 1960.

Jack P. F. Gremillion, Atty. Gen., Joseph H. Kavanaugh, Baton Rouge, for defendant-appellant.

T. W. Holloman, White, Holloman & White, Alexandria, Joseph R. Brown, for plaintiff-appellee.

TURNER, Justice.

This is an appeal by the Louisiana Public Service Commission from a judgment of the district court reversing, annulling and setting aside the order of the Louisiana Public Service Commission denying the Louisiana & Arkansas Railway Company's application for authority to discontinue operation of its agency station at Sarepta, Louisiana.

The Louisiana & Arkansas Railway Company made application to the Louisiana Public Service Commission for authority to discontinue and close its agency station at Sarepta, Louisiana, on the grounds that "Sarepta is not an economical operation, the necessities and convenience of the public do not require the maintenance of the agency, as it can be served as well from adjoining agencies, and L.C.L. [less than carload lots], service would not be changed, and the savings could be used to good advantage by petitioner in this day of increasing costs and decreasing business."

To this application, a petition of intervention was filed on behalf of the Village of Sarepta opposing the application on the grounds that the Sarepta station shows a profit to the railroad and "the inhabitants of the Town of Sarepta and the shippers and customers of the Louisiana & Arkansas Railway Company in the Town of Sarepta will be greatly inconvenienced by the loss of its station agency; that said shippers will be obliged to travel several miles, either to Cullen or to Cotton Valley, to secure bills of lading, etc. covering freight shipments." In contending that the railroad made a profit on its Sarepta station, this intervention used the amount of all the revenues attributable to the Sarepta station for the period January 1 to August 4, 1958, without deducting therefrom the portion that belonged to railroads other than plaintiff.

After hearing, the Commission denied the railroad's application stating that vigorous opposition was presented by residents of Sarepta and concluded: "The testimony indicates that for the period January 1 to August 4, 1958, which appears to be the latest test period available, the revenues of the station accruing to the applicant were $4,945.54, while the expense of operating the station was $2,561.80. It does not therefore appear that the operation of the station results in such a drain on the applicant's revenues as to warrant the inconvenience to the public which would ensue from the discontinuance of the agency * * *."

The railroad brought action in the district court to have the order of the Commission set aside and after trial the district court annulled and set aside the order of the Commission and the application of the railroad was granted ordering the discontinuance of the station at Sarepta as an agency station.

The Commission appealed to this Court contending that the decisions of the Louisi-

.ana Public Service Commission are to be given great weight by the courts and should not be disturbed unless they are found to be clearly erroneous and unsupported by the facts. Texas and New Orleans R. Co. v. Louisiana Public Service Comm., 233 La. 787, 98 So.2d 189; Illinois Central R. Co. v. Louisiana Public Service Comm., 224 La. 279, 69 So.2d 43. The Commission contends that the district court was in error in holding that the evidence did not support the Commission's finding that the agency station at Sarepta should not be discontinued because of the public inconvenience which would result from such action.

It is the contention of the railroad that, contrary to the finding of the Commission, there was an actual loss in the operation of the station at Sarepta for the period January 1 to August 4, 1958, as the Commission did not take into consideration the operating expenses, other than station expenses, which amounted to $3,711.13 resulting in a loss for the period in the amount of $1,327.-39.

The exhibits introduced by the railroad show that in 1957 the revenues at Sarepta amounted to $7,009.06 and the total cost of handling freight was $9,140.26 ($4,307.51 station expense and $4,832.75 the pro rata of systemwide expense) or a loss of $2,131.-20. From the period January 1 to August 4, 1958, revenues amounted to $4,945.54 and total cost of handling freight was $6,272.90

($2,561.80 station expense and $3,711.13 the pro rata of systemwide expense) or a loss of $1,327.39.

It is obvious that the Commission, in concluding that the railroad had suffered no loss at its Sarepta agency station for the periods in question, failed to deduct as an item of expense the agency's pro rata share of the general operating expenses of the railroad. In Missouri Pacific R. Co. v. Louisiana Public Service Comm., 238 La. 243, 115 So.2d 337, this identical question was before us and we held that in determining whether a particular freight station is operated at a profit or loss, consideration should be given to the station's proportionate share of the general operating expenses in the absence of expert evidence in the record that the railroad's method of accounting is incorrect. Therefore, in the absence of any evidence to the contrary, we must adopt the railroad's method of determining expenses attributable to each station as the correct one.

The allegation by intervenors that the Sarepta station operated at a profit is without foundation as in calculating that there was a profit, they used the entire amount of income received by the station without deducting therefrom the amount which belonged to other railroads. In its ruling, the Commission recognized that the railroad's method of computing its gross revenue from the Sarepta station was the correct method.

■ We conclude, therefore, that on the evidence in this record the Sarepta agency station was operated at a loss from January 1, 1957, through August 4, 1958.

On the question of whether the discontinuance of the agency station will seriously affect the public convenience and necessity, the evidence shows that the freight can be adequately handled at adjoining stations with a bare minimum of inconvenience to the consignor or consignee. The closing of the Sarepta agency station merely takes the station agent away. The station remains and freight can still be handled there by spotting the cars on the siding as previously done, and leaving the bill of lading at Cullen or Cotton Valley depending on the direction the train is traveling. Mr. C. J. Eslick, Chief Clerk to the Auditor in the railroad's Shreveport office, testified that there is not enough business to justify the operation of the agency station since freight could be handled at the adjoining stations of Cullen, 5.2 miles to the north, and Cotton Valley 5.5 miles to the south or by spotting the freight at Sarepta and a long distance call which would be paid for by the railroad. The railroad is paralleled by a modern hard surfaced highway from Cotton Valley, through Sarepta to Cullen and once the conveyance delivering the freight to the station, or picking it up, is loaded, it is only a matter of driving a few more miles. Most of us who live in urban areas are farther from a railroad station than five or six miles.

To show that revenues have been decreasing and costs increasing, the railroad offered in evidence Ex Parte Order No. 5296 dated December 2, 1949, in which the Commission first denied the railroad authority to discontinue operation of its agency station at Sarepta. This exhibit shows that for the year ending June 30, 1949, revenues at Sarepta amounted to $37,773.59 and station expense $2,891.87 (pro rata systemwide expense was not included) and a total of 356 cars. In contrast, it was shown that in 1957 only 57 cars were handled at Sarepta with four-fifths of the 50 inbound carload shipments being prepaid in which case there is no need for an agent. As to the seven cars shipped from Sarepta, six were by a resident of Plain Dealing who would have no more inconvenience in having his bill of ladings signed at Cullen or Cotton Valley than he would at Sarepta. It was shown that less than carload freight could be handled by an existing truck line with less inconvenience, by being delivered directly to the customers. There were no ticket sales in 1957 for passenger traffic, cash fare collections amounting to only $175.60, less than fifty cents per day.

The "vigorous opposition" found by the Commission consisted of testimony of residents who did not want the station closed but could offer no prospects of business for the railroad. Only one of the witnesses

testified that he had personally used the Sarepta station as a passenger and that was in 1904, and from Sarepta to Cotton Valley, a distance of 5.5 miles.

The strongest plea offered by the opposition is that they expect and hope for future development of their community. The only evidence to support this plea is by the rural mail carrier who testified that there has been an increase in population in the past several years. He stated, however, that the increase had been between Sarepta and Cotton Valley and between Sarepta and Cullen. These newcomers are for the most part employees of the International Paper Company who work at Cullen or Springhill, Louisiana, and drive to and from work by automobile. Of course when you reach the halfway mark to Cullen or Cotton Valley these residents are as near to station as they would be to Sarepta.

Sarepta is a five-day-a-week station. Cullen gives service around the clock, seven days a week. Cotton Valley gives six-day-a-week service, eight hours a day.

■ The rule in regard to discontinuance of an agency station is a determination of the public convenience and necessity in relation to such service and the expense of the operation as compared with the revenue therefrom. The circumstances which should be considered are the volume of business done at the station, its proximity to other stations, the accessibility thereof, the cost of maintaining such agency station, the financial loss, if any, to the railroad company, due regard for the welfare of the public, and the probabilities of future development. Missouri Pacific R. Co. v. Louisiana Public Service Comm., 238 La. 243, 115 So.2d 337; Texas & N. O. R. Co. v. Louisiana Public Service Comm., 235 La. 973, 106 So.2d 438; and Texas & New Orleans R. Co. v. Louisiana Pub. Service Comm., 233 La. 787, 98 So.2d 189.

■ Although the orders of the Commission are entitled to great weight and the burden is on the railroad to show the invalidity of the orders of the Commission, the court may reverse or vacate such order if the findings and conclusions of the Commission do not conform to the law and are not supported by the evidence.

■ In the instant case the record as a whole shows that there is no necessity for an agency station at Sarepta. Further, it is shown that the traffic can be taken care of adequately at Cotton Valley or Cullen with only the inconvenience of a long distance telephone call, paid for by the railroad. This slight inconvenience does not justify the continuance of the agency at Sarepta.

We conclude that order No. 7644 was unsupported by the evidence adduced at the Commission hearing and that the district judge ruled correctly when annulling it.

For the reasons assigned the judgment appealed from is affirmed.