127 So.2d 178

**ILLINOIS CENTRAL RAILROAD CO.**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION et al.**

No. 44809.

Feb. 15, 1961.

Jack P. F. Gremillion, Atty. Gen., Joseph H. Kavanaugh, Sp. Counsel to Atty. Gen., for defendants-appellants.

Breazeale, Sachse & Wilson, Baton Rouge, John W. Foster, Chicago, Ill., for plaintiff-appellee.

McCALEB, Justice.

This is another of a recent series of railroad agency discontinuance cases which have reached this Court on appeal.[1] On July 11, 1958, the plaintiff railroad applied to the defendant commission for the third time (previous applications of 1954 and 1957 were refused) for permission to discontinue its agency station at Norwood, Louisiana, which station formed a part of its Vicksburg Division. The petition, based on grounds similar to those twice rejected

by the Commission, alleged that "* * * the volume of all freight consigned to and from Norwood Station * * * has been steadily and constantly decreasing from year to year and the transactions * * * have been and have now become such that public convenience and necessity do not need or require the continuance and maintenance of Norwood Station hereafter" and that "* * * all business originating at or consigned to Norwood or its vicinity can and will be conveniently and adequately handled and transacted * * *" at either of two nearby stations "* * * without any undue and unnecessary delay, inconvenience, or hardship to any shipper or receiver of freight * * *".

After a hearing, the Commission denied the application by its Order No. 7599, dated July 31, 1958. Plaintiff then filed this suit to annul the order and for authorization to close the Norwood Agency, contending that the Commission's action was contrary to the evidence produced at the hearing, unreasonable and arbitrary and constituted a gross abuse of its discretionary powers.

After issue was joined, the case was argued and submitted on the evidence adduced at the hearing before the Commission and resulted in judgment for plaintiff, as prayed

1. See Louisiana & Arkansas Ry. Co. v. Louisiana Pub. Service Comm., 240 La. 658, 124 So.2d 899; Texas & Pacific Ry. Co. v. Louisiana Pub. Service Comm., 240 La. 669, 124 So.2d 902, 903 and Illinois Central R. Co. v. Louisiana Public Service Comm., 240 La. 769, 125 So. 2d 159, all of which were decided on December 12, 1960.

for. This judgment was dated February 6, 1959 and, upon the Commission's failure to appeal suspensively, plaintiff discontinued Norwood as an agency station. Several months later, however, the Commission took this devolutive appeal from the adverse decision.

The record reveals the following facts: Norwood is a small, rural community (510 persons) in East Feliciana Parish on the Vicksburg Division of plaintiff railroad over which only freight trains have been operated for a number of years. It is located two miles south of the Louisiana-Mississippi State line on U. S. Highway 91, a hard surfaced road which runs parallel to the railroad right-of-way and connects with Centerville, Mississippi ten miles to the north and McManus, Louisiana ten miles to the south. The railroad operates agency stations at Centerville and McManus which are presently available to the people of Norwood for use as shipping and receiving stations. In addition, there have been and presently are common and contract motor carrier trucks, particularly the Worthy Motor Lines, operating over the highway offering and giving freight service to the Norwood area in competition with the available railroad services.

It is further shown that there is adequate telephone service connecting Norwood with the McManus and Centerville agency stations and the cost of all calls relating to the handling of any freight for Norwood and vicinity would be absorbed by plaintiff railroad. Norwood will be maintained as a prepaid station without an agent in the same manner as prepaid stations with warerooms for freight storage are maintained elsewhere on other divisions of the railroad.

Evidence was adduced by the railroad which showed that, computed by the accounting formula employed by it to ascertain gross revenue allocable to various agency stations operated in conjunction with its system, the total revenue derived from the Norwood station for the years 1955, 1956, 1957 and the first three months of 1958 was $18,455.18 and that the total expenses were $27,955.55, thus reflecting a loss of $9,500.37. This evidence also exhibited that, during each of the last three years, the Norwood station has been operated at a loss.

At the hearing, four persons appeared in opposition to the discontinuance of the station and it was disclosed that the station at one time served, or might potentially serve, two factories (B. & B. Corporation and Haynes Lumber Co.), a Texas Company bulk service station and various farmers and cattlemen. A Mr. Gayden, representing the East Feliciana Parish Agricultural Committee, stated that there was a seasonal shipping of limestone and roadbuilding materials after the winter months. Mr. Edward Brass, President of B. & B. Corporation, which manufactures gunsight equipment, special safety control and certain

railroad equipment, testified that at one time (three years previous) about 40% of his freight shipping was handled by the railroad. Additional witnesses included Davis Folkes, a local farmer, and D. M. Randall, Manager of a cattle ranch for former Secretary of Defense Charles E. Wilson, both of whom certified the need for a continuance of Norwood as an agency station.

In denying the application, the Commission refused to give credence to the formula used by plaintiff in calculating the total receipts and expenses allocable to the station for the period in question and, by taking the total amount of freight receipts and the actual cost of operating the station, without any allowance for the proportionate share of system operating expenses attributable to Norwood, it was found that the station showed a net operating profit of $18,000 for the three years and three months involved.

In the district court, the order of the Commission was annulled and set aside on the authority of our decision in Missouri Pacific R. Co. v. Louisiana Public Service Comm., 238 La. 243, 115 So.2d 337, the judge concluding that the formula used by the railroad in assessing the financial operations of the Norwood station was acceptable and that the Commission's action, in substituting therefor its own calculations of net revenues without any evidence to support its findings, was clearly arbitrary.

It is seen from the foregoing statement that the circumstances presented in this case are indistinguishable in principle from those appearing in the three recent cases cited in Footnote No. 1 and those in Missouri Pacific R. Co. v. Louisiana Public Service Comm., supra. Indeed, insofar as financial problems are concerned, the case for plaintiff is much stronger than that of Texas & N. O. R. Co. v. Louisiana Public Service Comm., 235 La. 973, 106 So.2d 438, where it was held that the application of the railroad for authority to discontinue its Longstreet agency station should have been granted despite the fact that the station was making a small profit, as it appeared that the freight could be adequately handled at adjoining stations, the only inconvenience being that the shippers or consignees would be required to make long distance calls which would be paid for by the railroad.

The rule applicable in these matters has been many times stated by us (see Texas & New Orleans R. Co. v. Louisiana Pub. Service Comm., 233 La. 787, 98 So.2d 189 and many authorities there cited) and was tersely reiterated in our recent decision in Texas & Pacific Ry. Co. v. Louisiana Pub. Service Comm., 240 La. 669, 124 So.2d 902, 903, 904, thus:

"* * * the test employed in determining whether or not a railroad may properly be entitled to discontinue an

agency station, where an absolutely necessary service is not involved, is whether the public good derived from maintenance of the agency station outweighs the expense to the railroad in continuing such agency. In determining such matters consideration should be given to the volume of business done at the station, its proximity to other stations, the accessibility thereof, the cost of maintaining such agency station, the financial loss, if any, to the railroad, giving due regard to the welfare of the public and the probabilities of future development."

■ Applying these tests to the case at hand, we entertain no doubt as to the correctness of the district judge's conclusion for the evidence clearly establishes that the station has been continuously operated at a loss and that there are other stations in the vicinity, easily accessible to the public, which could and do, in fact, handle Norwood's business.

Special counsel for the Commission, however, argues that there is another factor appearing in this case which justifies the Commission's ruling. This contention has reference to evidence submitted by the protestants which shows that, following the Commission's rejection of the second application to close the agency station, plaintiff discontinued its telephone and substituted a postal card system to notify consignees of the arrival of freight and also, at various times, replaced the male agent with female employees who were physically unable to assist in the handling of freight.

The protestants voiced the opinion that the decline in the station's business is directly attributable to the above stated changes which, they declared, rendered the service so inefficient that it was preferable and more convenient to ship and receive freight by motor truck or to employ the agency station at Centerville, Mississippi. They also expressed the view that, if the telephone service were restored, plaintiff's business would probably increase.

■ We perceive little substance in counsel's contention. In determining whether a railroad is entitled to close an agency station, the issue is not whether the station has been operated as efficiently as it should have been or whether it would do better if certain improvements were made or a particular service restored but, as we have above stated, whether the public good derived from maintenance of the agency outweighs the expense to the railroad in continuing such agency. In the instant case, the railroad has shown that the agency station at Norwood is an uneconomical operation and that the public in that area can be adequately and conveniently served by the two agency stations ten miles north and ten miles south of the settlement.

The judgment appealed from is affirmed.