SUMMERS, Justice.
 

 Cameron Freight Lines, Inc., was the holder and owner of a Certificate of Public Convenience and Necessity issued by the Louisiana Public Service Commission as a common carrier of motor freight between Cameron, Louisiana, and Johnson’s Bayou over Louisiana Highway 292; between Cameron and ITackberry, Louisiana, over Louisiana Highway 104; from Abbeville, Louisiana, to Grand Chenier via Pecan Island over Louisiana Highways 43 and 292. It filed an application with the Louisiana Public Service Commission seeking an extension of the certificate to include the following points and routes: from Hack-berry to Lake Charles, Louisiana, via Highways 104 and 382 and from Johnson’s. Bayou to the Texas line; from Abbeville, Louisiana, to New Orleans, Louisiana, via Highways 14 and 90 and serving no intermediate points. The effect of the extensions if granted would be to give Cameron Freight Lines, Inc. a substantially continuous route from Lake Charles via Cameron,. Grand Chenier, Pecan Island, and Abbe-ville to New Orleans with no intermediate points served from Abbeville to New Orleans. The success of its application would permit Cameron Freight Lines, Inc. to. handle traffic originating in Lake Charles.
 
 *177
 
 •destined for New Orleans and from New ■Orleans destined to Lake Charles, serving ■only intermediate points from Abbeville via Pecan Island and Cameron to Lake ■Charles.
 

 This application was opposed by Plerrin 'Transportation Company, T. S. C. Motor Freight Lines, Inc. (now Ryder Track .Lines, Inc.), and Southern Pacific Transport Company.
 

 After a hearing the Louisiana Public Service Commission, by a divided vote, two to one, granted the certificate by its Order No. 7478 for the extension of routes and points requested by Cameron Freight Lines, Inc. Being dissatisfied, Herrin Transportation Company and T. S. C. Motor Freight .Lines, Inc. brought suit against the Commission in the Nineteenth Judicial District Court to annul and set aside the order and to revoke and annul the Certificate of Public Convenience and Necessity issued thereunder. Southern Pacific Transport Company intervened in the suit, uniting with Herrin Transportation Company and T. S. C. Motor Freight Lines, Inc., and adopted the allegations of the petition as its own.
 

 Plaintiffs and intervenor alleged that the Commission erred in granting the application and authorizing new service over Voutes which they and others had traversed and served for many years as motor carriers of general commodities, under authority of Certificates of Public Convenience and Necessity issued by the Interstate Commerce Commission and the Louisiana Public Service Commission which required them to service all intermediate points between Lake Charles and New Orleans over Highways 90 and 14.
 
 [1]
 
 The matter was submitted to the Trial Court on the record made before the Commission and the Order of the Commission was rendered null, void and of no effect and “cancelled” by judgment of that Court.
 

 Within rights accorded by law, the Commission is now seeking review of the case.
 

 The issue presented is essentially one which involves the right of the Commission to issue an order of this nature, the evidence required to sustain such an order, and the scope of judicial review of that order.
 

 LSA-R.S. 45:164 provides:
 

 “No motor carrier shall operate as a common carrier without first having obtained from the commission a certificate of public convenience and necessity, which shall be issued only after a written application made and filed, a public hearing, due notice given to applicant and all competing common carriers, and a finding by the corn-
 
 *179
 
 mission that public convenience and necessity require the issuance of a certificate.
 
 No new or additional certificate shall be granted over a route where there is an existing certificate, unless it be clearly shown that the public convenience and necessity would be materially promoted thereby.”
 
 (Italics ours).
 

 Thus, it is observed that the language of the statute requires a showing by the applicant that the public convenience and necessity would be “materially” promoted by the issuance of the certificate applied for.
 

 This language imposes upon the applicant a burden of proof which requires more than a mere showing that there is
 
 some
 
 evidence — there must be a clear showing that there is substantial evidence to support such a finding. See Texas & Pacific Co. v. Louisiana Public Service Commission, 201 La. 853, 10 So.2d 641; Illinois Central Railroad Company v. Louisiana Public Service Commission, 224 La. 279, 69 So.2d 43.
 

 Obviously, the Commission does not have an absolute right to grant or refuse to grant a Certificate of Public Convenience and Necessity, its authority being limited in this regard by the provisions of LSA-R.S. 45 :164.
 

 This limitation is readily recognized in the right granted by LSA-R.S. 45:1192 to parties, who are dissatisfied with orders 'of the Commission, to file suit and object to those orders; therein it is further provided that “The Court may affirm the order of the commission complained of, or it may change, modify, alter, or set it aside, as justice may require.”
 

 Additionally, the constitutional provision permitting appeals from Commission decisions states:
 

 “The orders of the Commission shall be enforced by the imposition of penalties as hereinafter provided, and
 
 any party in interest may appeal from orders and decrees of the Commission to the courts by filing suit,
 
 within ninety days from the date of the Commission’s order, and not thereafter, against the Commission at its domicile.” Article VI, Section 5, Louisiana Constitution, LSA. (Italics ours.)
 

 The record reveals that Herrin Transportation Company, T. S. C. Motor Freight Lines, Inc., and Southern Pacific Transport Company have been operating daily for many years, rendering an overnight delivery service of freight between New Orleans and Lake Charles, and between New Orleans and Abbeville with terminal facilities at each of these points. It is further made to appear that these carriers are willing to interchange freight at Abbeville and Lake Charles with Cameron Freight Lines, Inc. in order that
 
 *181
 
 •Cameron Freight Lines, Inc. might service the points below Abbeville and Lake Charles which are covered by the certificate which it previously held. The extension sought by Cameron Freight Lines, Inc. would have the effect of granting to it the closed door traffic from New Orleans to Abbeville, whereas the protesting carriers are required to serve all intermediate points along this route. In substance, the protesting carriers contend Cameron would thereby be granted the choice
 
 traffic,
 
 for the long-haul traffic without serving intermediate points is the most desirable, being less expensive — serving intermediate points which require frequent handling of freight being more costly. Cameron Freight Lines, Inc. contends that if it were granted the extension which it seeks it would then be able to give overnight service to the points which it serves below Abbeville and Lake Charles, such as Esther, Pecan Island, Grand Chenier, Cameron and Johnson’s Bayou. It has not, however, requested or sought to obtain an agreement for interchange of freight with the existing carriers serving Abbeville and Lake Charles.
 

 We are unable to determine from the record that any public convenience or necessity would be served by Cameron Freight Lines, Inc. hauling freight from New Orleans to Abbeville, where three lines are now doing so on an overnight basis, each of whom has manifested readiness to interchange with Cameron Freight Lines, Inc. at Abbeville and Lake Charles. There is evidently no doubt that an interchange agreement would enable Cameron Freight Lines, Inc. to give overnight service from New Orleans to its patrons below Abbeville and Lake Charles, and that each of the present carriers is willing to accommodate its schedule to assure this service. If Cameron Freight Lines, Inc. could effect any saving of time by carrying the freight directly from New Orleans the time saved would be inconsequential and no
 
 material
 
 public convenience would be served thereby. Overnight service from New Orleans is available to the patrons of Cameron Freight Lines, Inc. by interchange agreements with the protesting carriers. Interchange involves little or no delay, is an accepted practice in the transportation field, and can be effected.
 

 The record discloses that the certificated carriers over the New Orleans to Abbeville and New Orleans to Lake Charles route in question have ample facilities to handle all existing or foreseeable demands which are or might be made upon them. We are convinced that no substantial evidence has been introduced to show that the granting of the extension sought by Cameron Freight Lines, Inc. would materially promote the public convenience and necessity.
 

 There was some evidence of complaints due to delays in shipments from Lake
 
 *183
 
 Charles to the Hackberry area by Southern Pacific Transport Company. These complaints were uncorroborated, however, and, in most instances, based upon hearsay evidence.
 
 [2]
 
 Southern Pacific Transport Company concedes it has reduced the number of trips per week between Lake Charles and points to the south, but it is prepared to resume daily trips when the traffic load justifies the resumption. The lack of sufficient freight to justify daily trips serves to obviate a need for an additional carrier along this particular route.
 

 Although this Court has established that orders of the Commission should be given great weight, it has not been hesitant in reviewing the evidence to determine whether it was substantial enough to support the orders of the Commission. In Texas & New Orleans Railroad Company v. Louisiana Public Service Commission, 233 La. 787, 98 So.2d 189, 191, this Court stated:
 

 “With respect to the first contention the evidence adduced at the Commission hearing cannot support a finding of public demand and necessity for a continuance of the passenger service in question.”
 

 In another case when the Commission was reversed, it was said:
 

 “While it is true that the orders of the Commission are entitled to great weight and the burden is on the railroad to show the invalidity of the orders of the Commission, if the findings and conclusions of the Commission do not conform to the law and are not supported by the evidence, so that the order of the Commission is unreasonable, the court may reverse or vacate such order.” Texas & New Orleans Railroad Company v. Louisiana Public Service Commission et al., 235 La. 973, 106 So.2d 438, 442.
 

 Particularly appropriate to the case at bar is the expression of the Court, in the case of Texas & Pacific Ry. Co. v. Louisiana Public Service Commission, 199 La. 32, 5 So.2d 375, 377, viz.:
 

 “ * * * There is no evidence on which to base a conclusion that public convenience and necessity would be materially promoted by the issuing of a certificate allowing another common carrier of freight to operate between Alexandria and Shreveport on Highway No. 71, when
 
 there are already three competing common carriers operating over that route.
 
 It is declared in the statute which we have quoted that an additional certificate should
 
 *185
 
 not be granted over a route where there is an existing certificate,
 
 unless it be clearly shown
 
 that the public convenience and necessity would be materially promoted thereby.” (Italics ours). See, also, Texas & Pacific Ry. Co. v. Louisiana Public Service Commission, supra; Chicago Rock Island & Pacific Railroad Company v. Louisiana Public Service Commission, 234 La. 462, 100 So.2d 471; Missouri Pacific Railroad Company v. Louisiana Public Service Commission, 238 La. 243, 115 So.2d 337.
 

 The public is ultimately the loser as the result of unnecessary duplication of utility or transportation facilities. Reduction in income and revenues of existing carriers causes the inevitable reduction of schedules and services.
 

 As found by the Court below, “ * * * we find there is no specific evidence by applicants showing that the present service is inadequate * * * ”.
 

 We find no need to determine the constitutionality of certain rules of the Commission which permitted the admission of evidence which is said to be of a hearsay character, for our decision here would not be affected by so doing. The applicants cannot succeed even with the benefit of the evidence which the protestants object to.
 

 The judgment appealed from is affirmed.
 

 [1]
 

 . Abbeville is located on Highway 14 between New Orleans and Lake Charles, being 165 miles from New Orleans. The area being served by Cameron Freight Lines, Inc. lies south of Abbeville and Lake Charles.
 

 [2]
 

 . In Texas & New Orleans Railroad Company v. Louisiana Public Service Commission, 233 La. 787, 98 So.2d 189, 191, it was said: “True, a representative of the Brotherhood of Railroad Trainmen furnished testimony in contradiction of the company’s asserted loss. But thG judge properly gave it no weight because it was based wholly on hearsay.”