136 So.2d 382

**TEXAS & NEW ORLEANS RAILROAD COMPANY**

v.

**LOUISIANA PUBLIC SERVICE COMMISSION et al.**

No. 45794.

Jan. 15, 1962.

Chaffe, McCall, Phillips, Burke & Hopkins, William E. Crawford, New Orleans, for plaintiff-appellant.

Jack P. F. Gremillion, Atty. Gen., Joseph H. Kavanaugh, Special Counsel to the Atty. Gen., for defendants-appellees.

HAMITER, Justice.

The Louisiana Public Service Commission, after a hearing, refused the application of the Texas and New Orleans Railroad Company (plaintiff herein) to close its spur track agency station at Arnaudville, a municipality situated in an agricultural area of St. Martin Parish that produces principally cotton, sugar cane and perishable vegetables. The district court of East Baton Rouge Parish approved and affirmed the ruling. The instant appeal followed.

Applicable here is this observation contained in Texas and Pacific Railroad Company v. Louisiana Public Service Commission, 240 La. 669, 124 So.2d 902: "Under the settled jurisprudence of this court the decisions of the Louisiana Public Service Commission are accorded great weight and are not disturbed unless they are found to be clearly erroneous and unsupported by the evidence and according to the rule generally

prevailing the test employed in determining whether or not a railroad may properly be entitled to discontinue an agency station, where an absolutely necessary service is not involved, is whether the public good derived from maintenance of the agency station outweighs the expense to the railroad in continuing such agency. In determining such matters consideration should be given to the volume of business done at the station, its proximity to other stations, the accessibility thereof, the cost of maintaining such agency station, the financial loss, if any, to the railroad, giving due regard to the welfare of the public and the probabilities of future development."

Recognizing these principles, and conceding that it bears the burden of proof, plaintiff insists that several facts (listed in the brief of its counsel and hereinafter discussed) are established by the record in this matter which warrant our annulling the Commission's order under the authority of numerous cases decided by this court involving almost identical factual situations, particularly Texas and New Orleans Railroad Company v. Louisiana Public Service Commission et al., 235 La. 973, 106 So. 2d 438; Louisiana and Arkansas Railway Company v. Louisiana Public Service Commission, 240 La. 658, 124 So.2d 899; Texas and Pacific Railway Company v. Louisiana Public Service Commission, supra, and Illinois Central Railway Company v. Louisi-

ana Public Service Commission et al., 240 La. 769, 125 So.2d 159.

We disagree with plaintiff's appreciation of the evidence adduced and with its conclusion that the circumstances shown by the record are the same as in the cited cases wherein a discontinuance of other stations was held to be justified.

Quoting from the brief of plaintiff's counsel, it is said: "The volume of business is slight, as indicated by the light carloading and by the low total revenue figure. The financial loss suffered by plaintiff for a 12 month period, was $2605.48, and $1688.-10 for the following seven month period, or a total loss of $4293.58 for a 19 month period." However, it is noticed that the mentioned "light carloading" is based on figures shown on certain exhibits which reflect only carloads (eight in number) as defined by the Interstate Commerce Commission, not actual ones. Under I. C. C. rules a shipment of cotton is classified as a carload only when at least 50 bales are consigned by one shipper; a car fully loaded with 90 bales furnished by two consignors in the proportion of one-half by each would not fall in that category. In this connection an opponent of plaintiff's application testified that at least 40 fully loaded cars of baled cotton had been shipped during each ginning season of the 19 months' test period used (it is hereafter described).

Noticed also is an even more important factor affecting both the number of car-

loadings and the asserted "low total revenue figure" (and consequently the matter of financial loss, conceding that there was a slight one) to-wit: the test period of 19 months selected by plaintiff on which to base its application commenced in June, 1958 and followed shortly the occurrence of Hurricane Audrey in 1957 which had a devastating effect on the entire farming area in question. According to the record the agricultural situation there during that time was the worst in history, and for the wholly overcoming of the damage occasioned several seasons would be required. In view of such catastrophe the opponents of the application successfully and properly urged before the commission, as well as in the district court, that the test period selected did not reflect a true and fair picture of their farming activities.

■ Incidentally, when opponents sought to elicit from plaintiff's two witnesses the profit and loss figures relating to the Arnaudville station immediately prior to the hurricane occurrence neither of them then had the information available or offered to furnish it. One merely expressed the conclusion that freight volume in the area had declined in the past several years. Undoubtedly, plaintiff could and should have provided this information; and, in view of such failure, we may assume that such would have been detrimental to its cause had it done so.

Again, counsel state: "Arnaudville is only 10.3 miles distant from Breaux Bridge, plaintiff's adjacent agency station. Breaux Bridge is easily accessible from Arnaudville by hard surface road and by telephone." These facts do not tell the whole story. True, by rail Breaux Bridge is some 10.3 miles south of Arnaudville. However, by highway the distance is approximately 15 miles. And there was no showing as to distances of nearest stations in other directions. In most of the cases cited by plaintiff the stations discontinued were only from four to six miles distant from others situated on two sides.

Next, the brief of plaintiff recites: "The cost of maintaining the station annually is $5693.42." Conceding this figure to be the correct cost of operating the station it is without any real significance, particularly since no comparison with maintenance costs of similar stations was offered.

Next, counsel assert: "The welfare of the public is completely provided for in the usual fashion, by plaintiff's accepting collect telephone calls at Breaux Bridge, where all carload movements shipped or received would be easily handled, by handling less-than-carload shipments in the same fashion they are now being handled, and having bills of lading signed by the conductor when the freight cars were picked up by the train." These factual assertions and conclusions are not, in our opinion, justified by the evidence in the record.

True, it was shown that arrangements could be made to have a car "spotted" at Arnaudville (for loading) by telephoning the agent at Breaux Bridge. But it was also shown that plaintiff would assume no responsibility for a loaded car until it was receipted for by the conductor of the train connecting with it; that the shipper's own insurance is ineffective after the car is loaded; and that in some instances the pickups are delayed as much as two or three days. After the station's closing, in other words, loaded products situated on the spur track pending the train's arrival would be entirely at the risk of the shipper. Whereas now the risk becomes that of the railroad immediately upon loading of the car and the receipting for it by the station agent. One of plaintiff's employees attempted to minimize such hazard by stating that if a loss occurred before the pickup by the train he was sure that his company would do something about it. But the statement, of course, was in no manner binding on the railroad.

Moreover, the same witness freely admitted that his employer would not necessarily maintain the spur track at Arnaudville for carloading purposes following closure of the station; and that at Leonville, ten miles to the north, the track had been completely removed after discontinuance of its station there, despite the fact that in support of the closing order sought and obtained the assertion was made that "spotting" of cars in that municipality could be had by telephoning the station agent at Arnaudville which was only ten miles away.

With respect to less-than-carload shipments it appears that there will no longer be a motor freight agent at Arnaudville, if its station is closed, to handle them. Of course, collections and deliveries of shipments of that nature would be made within the city limits by the motor freight company drivers. But no such service would be available to those numerous farmers living outside and in the vicinity of the municipality. All of their shipping transactions would have to take place at Breaux Bridge. Clearly these many small, less-than-carload shippers would be seriously hampered and inconvenienced by the discontinuance presently sought, particularly those living north of Arnaudville.

Finally, plaintiff says: "No evidence of a probability of future development whatsoever is in the record, except for possible increased sugar planting as the result of Castro in Cuba." As we appreciate the record it discloses that, in addition to the admitted possibility of increased sugar planting in the area because of international problems, Arnaudville (without considering the immediate area outside) is a growing community, its population having increased from 875 in 1950 to more than 1250 in some eight or nine years. Certainly this is indicative of a probability of future development.

In view of the circumstances above pointed out we must agree with the district judge that plaintiff has failed to discharge the burden of showing that maintenance of the agency station at Arnaudville constitutes a substantial financial handicap in its operations and that discontinuance thereof will not have a serious adverse effect on the persons living in and near that municipality. Accordingly, we are unable to conclude that the assailed order of the Commission was an unreasonable exercise of the discretion vested in it.

For the reasons assigned the judgment of the district court is affirmed.