LAND, J.
This suit was instituted to contest the reasonableness of order No. 1598 of the Railroad Commission of Louisiana, adopted April 23, 1912, requiring the plaintiff company by August 1, 1912, to erect a *196 combination freight and passenger depot at Bossier City, and to place an agent in charge of the same. There was judgment in favor of the defendant, and the plaintiff has appealed.
[2,3] Bossier City is a small town or village situated on the east bank of Red river directly opposite the city of Shreveport. The two places are connected by a toll bridge, which belongs to the city of Shreveport and the parish of Bossier. Four railroads pass through Bossier City, to wit, the Vicksburg, Shreveport & Pacific, the St. Louis & Southwestern, the Louisiana Railroad & Navigation Company, and the Louisiana & Arkansas Railway. The Louisiana Railroad & Navigation Railroad extends from the city of Shreveport to the city of New Orleans. The St. Louis & Southwestern Railroad extends from the city of Shreveport to the city of St. Louis. The Vicksburg, Shreveport & Pacific Railroad extends from the city of Shreveport to Meridian, Miss., and the Louisiana & Arkansas from Shreveport, via Meridian, into Arkansas. The Vicksburg, Shreveport & Pacific Company is the only one of the three which has been required by the Railroad Commission to erect and maintain a passenger and freight depot in Bossier City. The record does not explain the reason of this discrimination against the Vicksburg, Shreveport & Pacific Company.
Bossier City, although situated in another parish, is an industrial suburb of the city of Shreveport. The industries carried on within the limits of Bossier City consist of five plants, one of which is not situated on the line of the plaintiff company. All of these plants ship in car load lots, and the managers of four of them testified that the establishment of a freight depot in Bossier City would not be of any material benefit to them. As to shipments in less than car load lots, the evidence shows that since July 1, 1909, when a flag station was established by plaintiff- company in Bossier City by order of the Railroad Commission, no such shipments have been tendered from or to that point.
As to passenger traffic, the records of the plaintiff company show that from July 1, 1909, to the date of the trial of the case below, a period of 1,065 days, 1,580 persons traveled to and from Bossier City, and that the gross revenue from this source amounted to $820 or 80 cents per day. It may be that during this period some persons living in Bossier City may have taken, or left, plaintiffs’ trains at the Shreveport depot, but there are no data in the record for even a guess at the number of such persons. The evidence shows that the population of Bossier City consists largely of laborers, many of whom work in the city of Shreveport.
Mr. Hearn, who had been superintendent of the plaintiff company for four years, testified that there has been no material change since 1909 in business conditions in Bossier City, except that one industry, the Fields Box Company, has closed down. In 1909 the Railroad Commission ruled that a flag station and freight shed would meet all the requirements of the situation.
What changes have taken place since 1909 to warrant the order for the erection and maintenance by the Vicksburg, Shreveport & Pacific Railway of a standard passenger and freight depot in the village of Bossier City? The evidence shows that since 1909 the passenger traffic, mostly local, has averaged 1 y2 passengers per day. The evidence shows that during the same period car load shipments have been satisfactorily handled through the Shreveport office, and that not a single less than car load shipment from Bossier City has been tendered to the railroad company. Outside of the manufacturing industries, the only business in Bossier City, as far as the record shows, is a retail store kept by Mr. J. B. O’Neal, who had been in business in that village for about 18 *198 months before the trial of the case. Mr. O’Neal trades in Shreveport and New Orleans. All of his goods from the latter place have been transported over the line of the Louisiana Railroad & Navigation Company. Mr. O’Neal states that, if the plaintiff company established a regular freight depot in Bossier City, he would order his goods-shipped from New Orleans, via Jackson, Miss., to Bossier City. Heretofore Mr. O’Neal has received his goods from New Orleans via the line of the Louisiana Railroad & Navigation Company, and has never made any shipments over the Vicksburg, Shreveport & Pacific Railroad. Mr. Hutchins, the only other witness who testified in favor of the defendant, was city clerk and notary public of Bossier City, and his wife was postmistress in the same village. Mr. Hutch-ins had never shipped any freight over the Vicksburg, Shreveport & Pacific line, but was one of the incorporators of a wholesale grocery company, which expected to locate in Bossier City if the Vicksburg, Shreveport & Pacific should be forced to erect and maintain a standard freight depot in that village. The new grocery company expected to compete with the wholesale grocers of the city of Shreveport, and, in order to do so, would be compelled to make, and receive, shipments in car load lots. As already stated, car load shipments into or from Bossier City have been for years satisfactorily handled from the railroad headquarters in Shreveport, and the uncontradicted evidence is that the managers of the industrial plants located in Bossier 'City have never made any demand for a freight depot in that village. Bossier City is within the telephone circuit of the city of Shreveport, and, as far as car load freight is considered, is on an equality with any portion of the city of Shreveport.
Of course, a regular passenger station is inore convenient than a flag station, but mere convenience will not justify the Railroad Commission in substituting the former for the latter.
The Louisiana Railroad & Navigation, the St. Louis & Southwestern, and the Louisana & Arkansas lines are used more or less by the residents of Bossier City for travel and the transportation of freight.- The testimony of Mr. O’Neal shows that the Louisiana Railroad & Navigation has no freight depot in Bossier City, and the record is silent as to the other railroads. If the plaintiff railroad can be constrained to establish and maintain a standard passenger and freight depot in the village of Bossier City, the record discloses no good reasons for exempting the other three railroads from similar burdens.
The situation presented is that of a separate municipality, which, at the same time, is a business part of a commercial emporium for a large section of the country. The freight depot and offices of the plaintiff company are nearer to Bossier City than they are to many. business and resident portions of the city of Shreveport. Every suburb of a city cannot be expected to be accommodated with a separate standard passenger and freight depot.
An official of the plaintiff company, being asked to give his reasons in general terms for his opinion that the erection of the depot in question was not justified by the prevailing conditions, testified as follows:
“Well, I think it is not justified, because, in the first place, there are many days when there are no passengers at all using the service, and the average number of passengers in and out of that station daily is only 1%. There is no less than car load freight handled whatever-, and the car load freight is as conveniently and promptly, and, as I said, in many instances more conveniently and promptly handled from the Shreveport side than if there were an agent on the other side of the river. The cost of a depot would be a useless burden upon the railway company. It would cost, according to the plans adopted, from $2,500 to $3,000, and from this initial cost neither the Railroad Company nor the community would receive any return. The salary of an agent, with the running expenses of the office, would be from $800 to $1,000 a year at a minimum, and that would *200 be a dead loss. It seems to me that this demand for an agency station over there is so unjustified and so unreasonable that I feel sure the Commission has no desire to place a burden on us, unless that burden be accompanied with some degree of benefit to the community, and in this case there does not seem to be anything of that sort. The business is so small that it would simply mean the putting of a man over there to stay on the job without anything to do, at the expense of the Railway Gompany. * * *
“By Commissioner Taylor: Q. Are those wholesalers and other people on the other side of the river insisting on an agency there? “A. No, sir; there is no demand from them at all.”
Our conclusion is that the order complained of is unreasonable and discriminatory, and should be set aside.
[1] Article 285 of the Constitution of 1898 provides for the review at the instance of any party in interest of any decision, order, rule, act, or regulation of the Railroad Commission by suit in a court of competent jurisdiction at the domicile of the Commission, and gives either party to the action the right to appeal the -case to the Supreme Court of the state, without regard to the amount involved. Appeals in all civil cases are “on the law and the facts.” Const. 1898, art. 285. I-Ienee it is not only the right, but the duty, of this court to determine whether the order complained of was justified by the facts of the case. This court is bound to interfere when it finds that the judgment appealed from is clearly wrong on the evidence. This court in several cases has reversed orders of the Railroad Commission as not justified by the facts of the case. See Texas & P. Ry. Co. v. Railroad Commission, 127 La. 387, 53 South. 660; Morgan’s L. & T. R. & S. S. Co. v. Railroad Commission, 127 La. 636, 53 South. 890; Yazoo & M. V. R. Co. v. Railroad Commission, 130 La. 1012, 58 South. 862. The first and third cases, supra, involved the question of the reasonableness of additional train service ordered by the Railroad Commission, and this court, finding that such service would result in a clear loss to the railroads, annulled the orders of the Railroad Commission. In the case at bar the loss to the plaintiff company would be much larger in proportion to revenues and expenses. In the second ease this court held that a freight rate which did not pay the actual cost of the service and a fair return on the capital invested was unreasonable.
Defendant cites the case of Morgan’s Louisiana & T. R. & S. S. Co. v. Railroad Commission, 109 La. 247, 33 South. 214, in which the Supreme Court sustained an order for the establishment of a freight depot at Berwick, a suburb separated from Morgan City by an arm of Berwick Bay about 700 yards wide, across which a steam ferry was operated. The facts in that case were materially different from those in the case at bar. The petitioners for the order, 25 in number, described themselves as receivers and shippers of freight at Berwick, and represented that they had no depot or other place for the protection of freight delivered at that point by the railroad. It was not disputed that a considerable quantity of freight for Berwick was handled by the railroad company. It was contended by the Commission that the evidence showed that Berwick was an important lumber shipping point; that the railroad derived a revenue exceeding $4,000 per annum from its business at Berwick; that the cost of a freight depot would not exceed $500, and the costs of maintenance, including wages of agent, would not exceed $1,200 a year; and that the surplus earnings of the railroad amounted to over $700,000 per annum. The difference between that case and the one at bar is glaring. Berwick was a busy shipping point, while Bossier City was no shipping point at all, except for freight in car load lots, which required no depot for storage and protection.
We think that we may safely decide the present case on the proposition that the evidence shows no public necessity for saddling *202 the plaintiff railroad with the expense of erecting and maintaining a standard passenger and freight depot in the village of Bossier City.
It is therefore ordered that the judgment appealed from be reversed; and it is now ordered that order No. 1,598 of the Railroad Commission, entered on April 23, 1912, and requiring the Vicksburg & Pacific Railway Company to erect a combination freight and passenger depot at Bossier City, La., and, when completed, to place an agent in charge of the same, and also requiring said company to submit to said Commission plans of said depot, be, and the same is hereby, annulled, avoided, and canceled, and declared to be of no force and effect.