150 So.2d 543

The SOUTHWESTERN STATES TELE-
PHONE COMPANY.

v.

LOUISIANA PUBLIC SERVICE
COMMISSION et al.

No. 46348.

Jan. 14, 1963.

Rehearing Denied March 25, 1963.

2

Joseph H. Kavanaugh, Baton Rouge, for defendants-appellants.

Curtis, Foster, Dillon & Huppenbauer, John C. Foster, E. E. Huppenbauer, Jr., New Orleans, for plaintiff-appellee.

HAMLIN, Justice.

The Louisiana Public Service Commission (Hereinafter designated as the Commission) appeals from a judgment of the district court which vacated and set aside Order No. 8670, of the Commission and authorized and empowered The Southwestern States Telephone Company (Hereinafter designated as the Telephone Company) to immediately increase its intrastate rates and charges in amounts sufficient to yield it a net return of 6% per annum on its agreed net investment in Louisiana, that is, on the sum of $4,153,377.00.[1]

The order of the Commission resulted from a hearing of the application of the Telephone Company for an adjustment in

---

1. The agreed net investment represents:

| | | |
|---|---|---|
| Plant in Service | | $4,587,852.00 |
| Materials and Supplies | | 89,644.00 |
| | | $4,677,496.00 |
| Less: Acquisition Adjustment | $ 25,314.00 | |
| Reserve for Depreciation | 449,637.00 | |
| Contributions in Aid of Construction | 49,168.00 | $ 524,119.00 |
| | | $4,153,377.00 |

its rate schedule of exchange rates and charges for intrastate telephone services furnished by it within the State of Louisiana so as to permit it to meet its reasonable operating expenses and realize a fair return of not less than 6½% per annum on its investment in the State of Louisiana.

In its application of November 16, 1960 to the Commission, the Telephone Company alleged that it owned and operated a public telephone system in approximately twenty towns and cities within the State of Louisiana,[2] furnishing local and long distance telephone services to subscribers located in said towns and cities and also to subscribers located in the rural areas lying adjacent to or in the general vicinity of the towns and cities. It further alleged that the rates and charges for services authorized in Order No. 7573 of the Commission (July 22, 1958) did not permit it to meet the current increase in material, equipment, and labor costs, the increased cost per telephone, and the materially increased costs of construction, installation, maintenance, and operation of facilities. It still further alleged "that the rates and charges for such services authorized in said Order do not produce sufficient revenues to meet the increased cost of operation and maintenance, and are wholly inadequate to afford Applicant a fair and reasonable rate of return

on its present investment in this state; that Applicant's current annual rate of return on its present investment in this state, excluding the towns of Oberlin, Ragley and Reeves, and giving effect to the Ville Platte Central Office replacement which was completed on October 10, 1960, amounts to only 2.18%. * * * that Applicant estimates it will require an additional amount of annual revenue in the sum of $388,487.11 to provide Applicant a 6½% per annum return on its said investment."

The Commission convened June 27, 1961 at Lafayette, Louisiana and heard testimony of the officers of the Telephone Company with respect to numerous exhibits presented by the Telephone Company involving investments, labor bargaining agreements, basic wages, construction budgets, and finances.

The Commission met again on October 11, 1961 and heard protests from subscribers with respect to service rendered by the Telephone Company, at which time the staff of the Commission offered testimony and exhibits.

The Commission convened for a third time on February 20, 1962, when witnesses called by the Telephone Company offered rebuttal testimony and promised to correct the matters previously complained of.

2. Basile, Cankton, Chataignier, Church Point, De Quincy, Elton, Fenton, Hayes, Iota, Iowa, Kinder, Lacassine, Mamou, Pine Prairie, Roanoke, Starks, Sunset, Thornwell, Ville Platte, and Welsh.

The Commission rendered the instant order on May 8, 1962, stating in conclusion that, "After having heard all the testimony in this case, it is the opinion of this Commission that in view of the numerous service complaints, no increase in rates should be authorized until substantial improvements to service have been made." It did find, however, that if an increase were granted, a rate of return of 5.53%, employing an earnings-price ratio, would be proper.

In its appeal to the Nineteenth Judicial District Court, the Telephone Company assigned certain errors to the order of the Commission, the most pertinent being the following:

"(a) The Commission erred in not following the mandate of the Supreme Court of Louisiana as is set forth in Southern Bell Telephone & Telegraph Co. vs. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372 (1960), in which case the Supreme Court held that notwithstanding the formula adopted by the Commission in fixing telephone rates, the Commission must so adjust the rates that the end result will be a return of not less than 6% on the property rate base of the applicant.

"(b) The Commission erred in failing to find that any rates which would

yield Petitioner a rate of less than 6% on its property rate base as required by the Supreme Court in the Southern Bell Telephone & Telegraph Company decision would be discriminatory and confiscatory, as well as unjust and unreasonable.

"(c) The Commission erred in maintaining in effect rates so low as to produce for Petitioner a rate of return far below the earnings required to meet its fixed charges, and preferred and common stock dividend requirements allocated to its Louisiana properties

\*   \*   \*   \*   \*   \*

"(e) The Commission erred in failing to find that Petitioner was entitled to charge rates which would yield gross revenue of not less than $212,264.00 as found by the the Commission's staff, so as to yield an annual rate of return of 5.53%."

The Telephone Company prayed that Order No. 8670 be decreed void and of no effect and cancelled, and that it be empowered to immediately increase its rates and charges for telephone service in the State of Louisiana in amounts sufficient to produce additional revenues in the amount of $388,487.11 annually, or such sum as the Court should find that the evidence in the

record justifies, such sum in no event to be less than one which would result in a rate of return to the Telephone Company of 6½% per annum on its net investment in Louisiana.[3]

The district court, relying on the case of Southern Bell Telephone & Telegraph Company v. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372, stated that it was of the opinion that the Commission was in error in admitting evidence of inadequate service and in denying plaintiff's application on that ground. In granting the Telephone Company a net return of 6% on its agreed net investment in Louisiana, it stated:

"It is abundantly clear that plaintiff is entitled to an increase in rates. It contends the increase should be sufficient to give it a net return of 6½% on its net investment in Louisiana. The Commission found a return of 5.53% to be proper, based on the recommendations of its staff. In the Southern Bell case, supra, the Supreme Court fixed the rate of return at 6%, and in my opinion this court is bound thereby notwithstanding the Supreme Court's departure from that figure in United

Gas Pipe Line Co. v. La. Public Service Com., 241 La. 687, 130 So.2d 652. * * *

* * * * * *

"A net return of 5.5% was allowed by the Supreme Court in the United Gas case, but I do not understand that decision limits all public utilities to that figure. In my opinion the jurisprudence and the evidence here entitle plaintiff to a net return of 6%.

"Plaintiff asks this court to fix in dollars the additional revenue to which the evidence shows it is entitled. The court finds it impossible to do this."

In this Court,[4] the Commission sets forth the following specification of errors to the judgment of the district court:

"1. In holding that the Trial Court was bound in the instant case by the ruling of this Honorable Court in Southern Bell Telephone and Telegraph Company vs. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372, (1960).

"2. In failing to hold that the cost of equity capital allowed by the Commission staff, namely, 7%, was reasonable and just and provided a return to the equity owners com-

---

3. LSA–R.S. 45:1192 provides that one allegedly aggrieved by an order of the Commission may file a petition in the district court of the domicile of the Commission setting forth the particular cause of objection.

4. Art. VI, Sec. 5, La.Const. of 1921, provides for appeals from district courts to this Court.

mensurate with the returns on investments in other enterprises having corresponding and similar risks.

"3. In failing to hold that the utility had failed to prove by a preponderance of the evidence that a 7% return on equity capital is not commensurate with returns on investments in other telephone companies having corresponding and similar risks.

"4. In failing to hold that an overall rate of return of 5.53% was adequate and reasonable under the circumstances.

"5. In failing to hold that the utility failed to prove by a preponderance of the evidence that an overall rate of return of 5.53% was inadequate and unreasonable under the circumstances."

The Commission prays that this Court find that the Telephone Company is entitled to a rate of return on its equity capital of an amount not in excess of 7%, and that it find that the Telephone Company is entitled to an overall rate of return of not in excess of 5.53%, and that, therefore, the judgment of the district court should be reversed and Order No. 8670 of the Louisiana Public Service Commission affirmed.

Answering the appeal of the Commission, the Telephone Company prays that the award of the district court be increased to 6½%; it avers that:

"The territory in the State of Louisiana served by plaintiff-appellee is predominantly rural and small communities; that the costs of serving subscribers in such rural areas and small communities are much greater than that of serving subscribers located in large urban areas; and that in this respect, plaintiff-appellee is in a less favored position than such a telephone utility as Southern Bell Telephone and Telegraph Company, which serves most if not all of the major cities in this state.

"Under the circumstances, plaintiff-appellee is entitled to a greater rate of return on its net investment in Louisiana and the District Court erred in not granting plaintiff-appellee authority and power to increase its its intrastate rates and charges in amounts sufficient to yield it a net return of 6½% per annum on its net investment in Louisiana."

The Commission utilized a 7% return for equity capital, which when weighted with the average cost of the debt items produced an overall rate of return of 5.53%. Staff Exhibit No. 2 sets forth:

THE SOUTHWESTERN STATES TELEPHONE COMPANY
COST OF CAPITAL AND DEVELOPMENT OF RATE OF RETURN
REQUIREMENTS BASED ON OUTSTANDING SECURITIES
AS OF JUNE 30, 1960.

| | Total | Per Cent | Cost Per Cent | Indicated Rate of Return |
|---|---|---|---|---|
| Common Capital Equity: | | | | |
| Stock at Par $ 872,984.00 | | | | |
| Premium 12,072,402.26 | | | | |
| Surplus 4,552,545.42 | 17,497,931.68 | 38.939 | 7.000 | 2.73% |
| Preferred Stock | 6,889,000.00 | 15.330 | 5.590 | .86 |
| Bonds | 20,550,000.00 | 45.731 | 4.240 | 1.94 |
| | $44,936,931.68 | 100.000 | | 5.53% |

The cost of equity capital is determined from the following:
(Source—Public Utilities Fortnightly, Nov. 10, 1960)

| | |
|---|---|
| Price per share—Oct. 18, 1960 (approx.) | $24.00 |
| Dividend rate | $ 1.20 |
| Yield | 5.00% |
| Earnings per share 12 Mos. June, 1960 | $ 1.60 |
| Pay-out ratio | 75.0% |
| Earnings-price ratio | 6.66% |
| Rounded out to | 7.00% |

Staff Exhibit No. 5 should be read in conjunction with the foregoing exhibit. It sets forth as follows the additional revenue requirements of the Telephone Company based on a 5.53% return:

| | |
|---|---|
| Net Rate Base—(Exhibit 1) | $4,153,377 |
| Rate of Return—(Exhibit 2) | 5.53% |
| Net Amount Required | $ 229,682 |
| Less—Net Operating Revenues as Adjusted—(Exhibit 1) | $ 129,793 |
| Net Deficiency | $ 99,889 |
| Factor for State and Federal Income Taxes—47.0588% | |
| Gross Amount Required for return of 5.53% | $ 212,264 |

The Telephone Company seeks to have a return of 9.11% allowed on its equity capital and prays for a net return of 6.50%. Its Exhibit J sets forth in part:

## HISTORICAL COST OF COMMON STOCK EQUITY

| Date of Sale | Shares Number | Price to Company | Proceeds to Company | Earning Per Share Date of Sale | |
|---|---|---|---|---|---|
| 6/22/43 | 49,976 | $ 6.00 | 299,856 | $1.09 | $ 54,474 |
| 5/ 9/49 | 56,000 | 9.08 | 508,480 | 1.75 | 98,000 |
| 4/ 6/50 | 65,000 | 11.85 | 770,250 | 1.44 | 93,600 |
| 11/ 9/51 | 62,500 | 13.85 | 865,625 | 1.64 | 102,500 |
| 9/16/52 | 80,000 | 13.98 | 1,118,400 | 1.40 | 112,000 |
| 2/11/54 | 100,000 | 17.13 | 1,713,000 | 1.59 | 159,000 |
| 12/16/55 | 100,000 | 18.43 | 1,843,000 | 1.41 | 141,000 |
| 2/17/59 | 140,000 | 24.65 | 3,451,000 | 1.57 | 219,800 |
| | | | 10,569,611 | | 980,374 |

## PREFERRED STOCK CONVERSIONS:

| | | | |
|---|---|---|---|
| 1.32 Series | | 1,212,460 | 104,834 |
| 1.44 Series | | 1,086,403 | 87,939 |
| | TOTAL | 12,868,474 | 1,173,147 |

Weighted Earnings—Price Ratio
(Historical Cost of Common Equity)  9.11%

## BOOK VALUE OF COMMON STOCK AS OF JUNE 30, 1960

| | |
|---|---|
| Total equity (common stock and retained earnings) | $ 17,481,680 |
| Shares Outstanding | 872,123 |
| Book Value | $20.04 |

## COST OF MONEY

| | Amount | Ratio | Ratio | Annual Cost |
|---|---|---|---|---|
| Bonds | $20,250,000 | 46.0% | 4.26% | $ 862,650 |
| Preferred Stock | 6,401,500 | 14.5% | 5.69 | 364,245 |
| Common Stock Equity | 17,481,680 | 39.5% | 9.11 | 1,592,581 |
| | $44,133,180 | 100.0% | | 2,819,476 |
| Weighted Estimated Cost of Money | | 6.39% | | |

'TOTAL COMPANY

Rate Base as at June 30, 1960:

| | | |
|---|---|---:|
| Telephone Plant in Service | | $47,930,671 |
| Less: Depreciation Reserve | | 6,050,572 |
| | | 41,880,099 |
| Add: Materials and Supplies | | 907,723 |
| Working Capital | | |
| (1/12 of Operating Expenses) | | 497,135 |
| Non-Interest Bearing Telephone Plant | | |
| Under Construction | | 286,000 |
| | | 43,570,957 |
| Deduct: Plant Acquisition Adjustment | | 263,124 |
| Donated Plant | | 295,878 |
| NET RATE BASE | | $43,011,955 |

Rate of Return required on Net Rate
Base of $43,011,955 to produce
Earnings at the Rate of $2,819,476.     6.55%

———————◆———————

When asked to explain how the weighted earnings-price ratio of 9.11% shown in Exhibit J was arrived at, Russell J. Loveland, President of the Telephone Company, testified:

"A.  This is a history of the sale of common stocks in this country. Prior to 1933 there were very few shares outstanding. I believe it was something less than 100 thousand. In 1943 the first sale of stock was made. The Company received six·dollars a share for the 49,976 shares sold. The earnings prior to the date of this sale amounted to $1.09 per share of common stock outstanding prior to the sale. Hence, we computed the price—to compute the earnings ʹprice ratio, which is done on a weighted basis, we have taken this number of shares of ·stock and multiplied it by $1.09. That is the .number of shares sold and this is ultimately used on this Exhibit to develop the weighted earnings-price ratio. The same computation was made in 1959, when 56,000 shares of stock was sold to the·Company for which the Company received $9.08 per share. As ·you can see, we have been continually.been financ-

ing stock, 1949, 1950, 1951, 1952, 1954, 1955, 1959, and in 1959 that *is the last sale of common stock shown on this Exhibit.* We also had some convertible preferred series outstanding, and during the year in which they were converted we again computed the earnings-price ratio just before the conversion. This shows— This exhibit shows that the weighted earnings-price ratio and historical cost of the common equity of the Company amounts to 9.11 percent.

"Q. Under Section 6 of the Exhibit you show cost of money, and you have a weighted estimated cost of money of 6.39 percent. Would you please explain to the Commission how this figure of 6.39 percent was arrived at?

"A. In this instance, we simply took the number of bonds outstanding. Now, this is as of June 30th. So, the preferred stock had been sold, but not delivered; and the bonds that had been sold but not delivered were not reflected in this, although it would not change the computation to any degree. The 20 million of bonds showing an effective interest rate of 4.26 percent had an annual debt cost of 862 thousand. The preferred

stock segment of the capital had an annual cost of 364 thousand. The common stock equity is 17 million, 481 thousand, and had an annual cost of 1 million, 592 thousand.

"Q. How was this figure arrived at?

"A. These are just the historical costs. This is the historical cost of the capital.

\*　　\*　　\*　　\*　　\*　　\*

"Q. \* \* \* In your computation of the cost of money how did you arrive at that common stock equity at the rate of 9.11? Is that what this money would be earning?

"A. This is the composite historical cost of the earnings-price ratio would be for that money.

"Q. Would that be the dividend that an individual would receive?

"A. No. No, this is the money the Company receives from the sale of common stock that is invested in telephone plant; and this is what that money costs the Company.

\*　　\*　　\*　　\*　　\*　　\*

"Q. You are not losing any money then, Mr. Loveland, are you?

"A. I don't understand what you mean by that question.

"Q. You are not losing money. Your Company is not in the red?

"A. In the overall operation of the Company we have been able to cover our dividends, but not with the margin which we believe is safe and adequate.

"Q. You just want to make a little more money?

"A. This is a matter of working with the stockholders in trying to make the stock a valuable thing, and if the stock can be made valuable I believe that experts have proved that ultimately the cost of money is less and the rates are lower."

The Telephone Company contends that its testimony and exhibits introduced at the hearing of February 20, 1962 (at which Pat Weekly and H. N. Hammond testified on rebuttal) emphasize the unreasonableness and confiscatory effect of its present rate of return. Its Exhibit M sets forth:

### NET INCOME PER COMMON SHARE OUTSTANDING AT END OF PERIOD TWELVE MONTHS ENDING JUNE 30, 1960 PER BOOKS

|  | Louisiana | Total Company |
|---|---|---|
| Average net telephone plant in service | $ 3,895,098 | $ 39,672,732 |
| Ratio of Louisiana plant to total plant | 9.818% | 100.000% |
| Total net earnings before Fixed Charges and Federal Income Tax | $ 207,194 | $ 3,931,093 |
| Fixed Charges | 64,276 | 654,671 |
| Total net earnings before Federal income tax | $ 142,918 | $ 3,276,422 |
| Federal income tax | 67,899 | 1,556,600 |
| Net income available for dividends | $ 75,019 | $ 1,719,822 |
| Preferred stock dividends | 31,815 | 324,047 |
| Net income available for Common stock | $ 43,204 | $ 1,395,775 |
| Common stock outstanding at end of period | 85,625 | 872,123 |
| Earnings per share | $ .50 | $ 1.60 |

The Telephone Company's Exhibit N sets forth:

NET INCOME PER COMMON SHARE OUTSTANDING AT END OF
PERIOD TWELVE MONTHS ENDING JUNE 30, 1961 PER BOOKS

|  | Louisiana | Total Company |
|---|---|---|
| Average net telephone plant in service | $ 4,212,184 | $ 43,928,094 |
| Ratio of Louisiana plant to total plant | 9.588% | 100.000% |
| Total net earnings before Fixed Charges and Federal Income Tax | $ 154,321 | $ 4,393,396 |
| Fixed Charges | 79,128 | 825,283 |
| Total net earnings before Federal income tax | $ 75,193 | $ 3,568,113 |
| Federal income tax | 35,853 | 1,701,600 |
| Net income available for dividends | $ 39,340 | $ 1,866,513 |
| Preferred stock dividends | 32,571 | 339,702 |
| Net income available for Common stock | $ 6,769 | $ 1,526,811 |
| Common stock outstanding at end of period | 87,700 | 914,689 |
| Earnings per share | $ .08 | $ 1.67 |

Other exhibits of the Telephone Company reflect that gross additions in Louisiana properties amounted to $141,868.24 for the six months ending June 30, 1961, as compared with $667,181.00 for the year 1959 and $788,263.33 for the year 1960; and, that net operating revenues for Louisiana for this same period amounted to $62,503.06, as compared with $136,632.18 for the year 1960 and $144,085.14 for the year 1959.

The Telephone Company operates in Arkansas, Oklahoma, Texas, and Louisiana. It is apparent from the above exhibits that the Louisiana earnings are low when compared with the overall Telephone Company earnings.

John D. Allen, Revenue Requirement Supervisor, testified that the number of telephones in service in Louisiana as of June 25, 1960 was 12,315, as compared with 10,-998 as of August 21, 1958; that the system was 100% dial. He testified that since Order No. 7573 was rendered, the Telephone Company had expended about one-half million dollars a year in Louisiana; that the 1961 budget provided for expenditures of over one million dollars ($1,025,610.00), and that wages were increasing under the Minimum Wage Law. Mr. Allen further testified:

"I believe I will start with the year 1958, the construction budget in that year. Our construction budget in 1958 provided for $611,800.00, in the State of Louisiana. In 1958 we actually spent $570,858.09. In 1959 our construction budget amounted to $627,500.00. Actually, we spent $691,450.94 in the State of Louisiana in the year of 1959. We exceeded our budget that year. In the year of 1960 our budget provided for an expenditure of $726,860.00 We actually spent that year $773,738.06, an increase that year over our budget; and in the year of 1961, as I mentioned a while ago, it provides for $1,025,610.00 to be spent this year."

Mr. Allen stated that all figures given by him were attributable to Louisiana.

Pat Weekly, General Auditor of the Telephone Company, testified as follows:

"Q. According to these exhibits and the calculations set forth therein as of June 30, 1960 what was the total investment or rate base of the Southwestern States Telephone Company in the State of Louisiana?

"A. Our total investment to June 30, 1960 was $4,245,179.36.

"Q. As of that date what was the rate of return on the investment or rate base in this State?

"A. The rate of return was 2.18 percent.

\*        \*        \*        \*        \*        \*

"Q. You previously testified that the rate of return on your investment or rate base was 2.18 percent. Do you believe that this rate of return is adequate or inadequate?

"A. I believe it is inadequate.

"Q. What in your opinion would be a fair rate of return for the Southwestern States Telephone Company on its total investment or rate base in the State of Louisiana?

"A. I would say 6½ percent.

"Q. How much additional annual revenue would be required to provide the Southwestern States Telephone Company with a 6½ percent return on its investment?

"A. Additional revenues of $388,487.-11 would be required to yield a return of 6½ percent.

\*        \*        \*        \*        \*        \*

"Q. Mr. Weekly, why do you think 6½ percent, why it should be that high, the return on your investment?

"A. Well, I would consider that to be a reasonable rate of return, because it is approximately what the cost of money is or what a fair return would be."

Mr. Weekly further testified that after a proposed sale to Four States Telephone Company, the rate base would be adjusted

to $4,021,916.51, and that there would be a reduction or adjustment in the depreciation reserve.

The principal issue involved is the rate of return to be allowed plaintiff-appellee on its equity capital.

██ The major difference between the parties in arriving at the cost of equity capital is the method of computing earnings-price ratio. The Telephone Company calculated its earnings-price ratio on an "historical cost" basis and reached a weighted earnings-price ratio of 9.11% (See Exhibit J, supra). The Commission's Staff employed the market price per share of a particular day, i. e., October 18, 1960, and arrived at an earnings-price ratio of 6.66%, which it rounded out to 7% (See Staff Exhibit No. 2, supra); it utilized this rounded out figure of 7% return for equity capital in arriving at a rate of return of 5.53%. Since these methods are different and irreconcilable, it is the duty of this Court to fix a rate of return which will strike a reasonable medium. Such rate should not be unreasonable, whether considered from the viewpoint of the subscriber, the investor, or the Telephone Company. It is the result reached, not the method employed, which is controlling. Southern Bell Telephone & Telegraph Company v. Louisiana Public Service Commission, 232 La. 446, 456, 94 So.2d 431, 436.

██ In its approach to the ascertainment of a rate of return, this court must observe that the ascertainment of a fair return in a given case is a matter incapable of exact mathematical demonstration and is one of reasonable approximation, having its basis in a proper consideration of all relevant facts. Southern Bell Telephone & Telegraph Company v. Louisiana Public Service Commission, 239 La. 175, 225, 118 So.2d 372, 390. It is not only the right, but the duty, of this court to determine whether the order complained of was justified by the facts of the case. Vicksburg, S. & P. Ry. Co. v. Railroad Commission, 132 La. 193, 61 So. 199. We have repeatedly held that, "While it is true that the orders of the Commission are entitled to great weight and the burden is on the railroad [this would apply to any other body] to show the invalidity of the orders of the Commission, if the findings and conclusions of the Commission *do not conform to the law and are not supported by the evidence, so that the order of the Commission is unreasonable,* the court may reverse or vacate such order." (Emphasis added.) Texas & N. O. R. Co. v. Louisiana Public Service Commission, 235 La. 973, 106 So. 2d 438. See, Texas and Pacific Ry. Co. v. Louisiana Public Service Commission, 240 La. 669, 124 So.2d 902; Texas and N. O. R. R. Co. v. Louisiana Public Service Commission, 241 La. 635, 130 So.2d 398; Texas & Pacific Ry. Co. v. Louisiana Public Service Commission, 242 La. 357, 358, 136 So.2d 385.

██ Despite the fact that it enjoys protection from the total company operations,

the evidence and exhibits, supra, definitely disclose that the Telephone Company is entitled to an increase in its intrastate rate of return in Louisiana. We find from a comparison of the Commission's Staff Exhibits and the Telephone Company's Exhibits and from a study of the testimony of record that a rate of return of 5.53% is not substantial enough to enable plaintiff to meet its obligations and carry on its past and anticipated improvements.[5]

The trial judge felt that he was bound by the case of Southern Bell Telephone & Telegraph Company v. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372, in fixing a rate of return of 6%. He did say, however, that the evidence entitled plaintiff to a net return of 6%.

The burden of showing the unreasonableness or the invalidity of Order No. 8670 rested upon the Telephone Company. Texas & N. O. R. Co. v. Louisiana Public Service Commission, 235 La. 973, 106 So. 2d 438. We find that the Telephone Company has carried this burden and has shown that the conclusions of the Commission in fixing the rate of return at 5.53% do not conform to the law and are not supported by the evidence.

We also find that the rate of return of 6½% requested by the Telephone Company is not supported by the evidence; it is enmeshed with the total company figures and is larger than the weighted estimated cost of money, 6.39%.

We further find that there are presently no exceptional circumstances in this case authorizing an increase of the 6% rate of return fixed by the trial court.[6] If after having been employed for a reasonable

---

5. The question of service has not been raised in this Court; we consider it to have been abandoned.

6. In our own approach, we have utilized the following simplified method, which we emphasize is not to be considered a controlling method. It is merely one which assists us in the instant matter.

| | | |
|---|---|---|
| Rate of return fixed by the Commission ........... | 5.53% | |
| Weighted Estimated Cost of Money ............... | 6.39% | |
| | 2/11.92% | |
| | 5.96% | 5.960% |
| Rate of return fixed by the Commission .......... | 5.53% | |
| Rate of return requested by the Company ........ | 6.50% | |
| | 2/12.030% | |
| | 6.015% | 6.015% |
| Rate of return fixed by the Commission .......... | 5.53% | |
| Rate of return requested by the Company ........ | 6.50% | |
| Rate of return fixed by the trial court .......... | 6.00% | |
| | 3/18.03% | |
| | 6.01% | 6.010% |
| | | 3/17.985% |
| | | 5.995% |

time this rate is found to be unreasonable or confiscatory, the Telephone Company has the right to apply to the Commission for relief.

We do not hold that an overall rate of return of 6% is applicable to every case of this nature. Each case must be decided on the facts and circumstances shown to exist; each case has a particular and separate life of its own; the problems of one case are not the problems of another.

For the reasons assigned, the judgment of the district court is affirmed.

HAMITER, J., concurs in the result.

McCALEB, J., concurs with written reasons.

SANDERS, J., dissents with written reasons.

McCALEB, Justice (concurring).

Although I am inclined to believe that the showing made by plaintiff would justify a holding that it is entitled to a rate of return of 6½% on its net investment in Louisiana, I cannot say that the 6% rate allowed by the District Judge, which we have approved, will be inadequate to produce a just and fair return to plaintiff.

Furthermore, while no issue is taken with the statement contained in the majority opinion that a public utility is not entitled to an overall rate of return of 6% in every case, as I assume that the statement is not meant to include those utility businesses in which the Commission has heretofore allowed generally a 6% rate of return, I am in full accord with the view of the trial judge that, under the decision in Southern Bell Telephone & Telegraph Co. v. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372, plaintiff is entitled to no less than a 6% rate of return. For, in the absence of a showing of exceptional circumstances (and there were not any in this case), the fixing by the Commission of a lower rate than that allowed Southern Bell was plainly discriminatory. Gulf States Utilities Co. v. Louisiana Public Service Commission, 222 La. 132, 62 So.2d 250.

I respectfully concur.

SANDERS, Justice (dissenting).

As correctly stated in the majority opinion, there is no standard rate of return applicable to all utilities. The basic reason for this is that the rate issue is a question of fact. Hence, it must be resolved by a detailed consideration of the evidence in each proceeding.

In the instant case, the only serious issue is the cost of common stock equity, a component of the over-all rate of return in a cost-of-capital analysis.

The record reflects that in making a determination of this cost, the staff of the

Louisiana Public Service Commission utilized the earnings-price ratio. While this technique has shortcomings, it is designed to reflect investor opinion as to the attractiveness of the common stock as an investment. It represents an evaluation of the stock by the investor. By relating the current price [1] of the common stock to the current earnings,[2] the staff constructed an earnings-price ratio of 6.6%. The ratio was rounded to 7% for the following cost-of-capital determination:

|  | Per Cent | Cost Per Cent | Indicated Rate of Return |
|---|---|---|---|
| Common equity: | 38.938% | X 7.00% = | 2.73% |
| Preferred stock: | 15.330% | X 5.59% = | .86% |
| Bonds: | 45.731% | X 4.24% = | 1.94% |
| Over-all cost of capital | | | 5.53% |

The Southwestern States Telephone Company likewise utilized the cost-of-capital approach in its presentation of evidence. Differently, from the Commission staff, however, Southwestern examined the stock issues from 1943 to 1959 and related the earnings per share *at the date of the sale by the company* of each issue to *the proceeds to the company* from the sale. Using this method, Southwestern constructed a ratio of 9.11%, which it termed a weighted earnings-price ratio.

It can be perceived that the ratio developed by Southwestern cannot truly reflect investor opinion as to the attractiveness of the common stock, or the current cost of equity capital. Hence, in my opinion, the Commission very properly rejected it.

I cannot subscribe to the view of the majority that since "these methods [of ascertaining the earnings-price ratio] are different and irreconcilable, it is the duty of this Court to fix a rate of return which will strike a reasonable medium." When the Commission was faced with a choice between the two competing ratios, it very properly approved the one which constituted the more reliable evidence of the cost of common equity. This was the ratio developed by the Commission staff in accordance with the methods used by the Commission in previous rate hearings. In my opinion, this Court should likewise approve the ratio.

A review of the record has convinced me that the rate of return approved by the

1. Based on the final 6 months of 1960. (The rate hearing commenced on June 7, 1961).

2. Based upon the 12 months ended June 30, 1960.

Commission [3] of 5.53%, which includes 7% on the common stock equity, is not unreasonable. It evidences no abuse of power by the Commission. This is true, in my opinion, despite the fact that the enhancement by the Commission of the earnings-price ratio was only .34%, achieved by the rounding of figures. The rate of 7% on common stock is certainly realistic. The cost included for preferred stock and bonds is compensatory, for it has a contractual basis. The over-all rate will enable the company to operate successfully, to maintain its financial integrity, and to compensate its investors for the risks assumed.

The majority has adopted an over-all rate of return of 6%. When this is differentiated according to the standard method, it reflects a cost of 8.21% for common stock. This represents a rather drastic increase. Moreover, it follows a substantial increase in rates granted by the Commission to Southwestern on August 21, 1958.

Rate-making involves a delicate balancing of investor and consumer interests. The consumer interest cannot be submerged without detriment to the concept of legislative rate regulation. The cost of living, of which the Court can take judicial cognizance, is now at a record height. Since Southwestern has few, if any, long distance lines emanating from the affected area, the full impact of the rate increase will fall

upon local service to the residential and business subscribers. Hence, the escalation of tariffs to these subscribers for their local service will be extensive. Moreover, as the evidence discloses, the subscribers of Southwestern are already paying higher tariffs than are those in the surrounding area connected with other telephone systems.

Based upon the evidence in the instant case, I would adopt the 7% cost of the common stock and fix the over-all rate of return at 5.53%, as approved by the Louisiana Public Service Commission. If this rate of return proves inadequate in the future, the doors of the Commission are open to Southwestern for further rate adjustments.

I respectfully dissent.

---

3. But withheld because of inadequate service by the telephone company.