SUMMERS, Justice.
The LaSalle Telephone Company is appealing from a judgment of the Nineteenth Judicial District Court affirming an order of the Louisiana Public Service Commission which denied a rate increase sought by LaSalle.
After the original hearing before the Commission the company appealed to the district court where new evidence was introduced. The matter was then remanded to the Commission for consideration in light of the further evidence. The Commission, after commenting upon the new evidence, found no reason to depart from its findings in the original order and readopted the statements and reasons thereof. Thereafter, the district court affirmed the Commission’s order and this appeal followed.
LaSalle Telephone Company, Inc. is domiciled in the town of Jena in LaSalle Parish. Its telephone system provides service to the general public in a sparsely populated area which extends into the parishes of LaSalle, Franklin and Catahoula with exchanges at Jena, Olla, Urania and Tullos in LaSalle Parish, and Wisner in Franklin Parish. Its present rates were established by the Commission in 1956.
LaSalle represents in its application filed on February 16, 1960, that, due to substantial increases in its costs of doing business, it is operating without a fair return on the value of its properties. Therein it seeks an increase in its rates calculated to increase its earnings to only 3.9 per cent. During the test year ending September 30, 1959, for which LaSalle ' furnished data, it was earning only 3.7 per cent of its net investment. The net operating income for that year was $33,146.93. The requested increase, if granted, would have yielded $35,395.72, or an increase of $2,248.79 annually.
It is contended by LaSalle that an increase in its monthly rates for one-party service, both commercial and domestic, will *456 enable it to earn a fair return. Under this proposal the one-party business phone rates will be increased from $6.75 to $9.00 and the residence phone from $4.25 to $6.50, an increase of $2.25 each. These increases will affect the Jena, Olla, Tullos and Urania exchanges where extended area service is provided. Extended area service means that no tolls are charged for calls between the towns served in the extended area, the dialing being direct without the help of an operator. The distance from Olla to Jena is approximately 17 miles; it is some 16 miles from Tullos to Jena. Urania is roughly the same distance from Jena. A “free call” area of approximately 275 miles is thus comprised and served by those exchanges. At the Wisner exchange, which is isolated from the others, the one-party business telephone rates would be increased from $6.25 to $8.00 and the one-party residence telephone rates would be increased from $4.00 to $5.75. We observe that the extended area service here involved provides inter-town and inter-village toll-free telephone communication not ordinarily available at the rates charged by LaSalle.
Approximately 3,400 stations are operated and served by LaSalle. Slightly more than 12 per cent of the subscribers will be affected by the proposed increase, or 175 one-party residential phones and 269 one-party business phones: a total of 444 phones.
There is no opposition to LaSalle’s proposal.
On the basis of a study submitted to the Commission, it appears that the rates proposed for one-party business phones for Jena, Olla, Tullos and Urania compare favorably with that of other exchanges similarly situated. Thus for the Jena, Tullos, Olla and Urania exchanges, with 3,112 extended area stations the rate proposed is $9.00 in lieu of an existing rate of $6.75. Elsewhere, for instance at the Springhill, Shongalo and Sarepta exchanges with 2,193 extended area stations, the rate is $10.00. For the Belcher, Hosston, Gilliam and Ida exchanges with 550 extended area stations the rate is $8.50. For the DeQuincy, Bagley and Starks exchanges with 1,842 extended area stations the rate is $9.80. For the Ville Platte, Chataignier and Pine Prairie exchanges with 3,240 extended area stations the r^te is $9.80 and for the Welsh, Fenton, Hayes, Lacassine, Roanoke and Thornwell exchanges with 1,602 extended area stations the rate is $9.80.
It will be noted from the foregoing that the rates proposed by LaSalle for one-party business phones at Jena, Tullos, Olla and Urania are the lowest in every instance but one. However, the Belcher, Hosston, Gilliam and Ida exchanges, which do have a lower rate of $8.50, only provide extended area service to 550 stations, which is appreciably less than the 3,112 stations available through the Jena, Olla, Tullos and Urania exchanges. In any event, the $6.75 rate now being charged by LaSalle at the Jena, Olla, Tullos and Urania exchanges is markedly less than the rates being charged at the other exchanges treated in the study and represented to be similarly situated.
The residence rates proposed by LaSalle, on the other hand, are somewhat higher than those charged by the exchanges with which a comparison was made, LaSalle proposing an increase from $4.25 to $6.50 as compared to rates of $4.55, $4.65 and $5.50 charged by the other exchanges during the test period. However, in partial justification of the higher rate it may be said that the area served by the LaSalle exchanges is more extensive and consequently more toll-free service is provided.
The Commission observed that the rates LaSalle proposes are reasonable and in keeping with the rates of other companies providing extended area service.
Furthermore, the Commission’s own evidence supports the finding that the service being provided by the LaSalle Telephone Company is “one of the best jobs in the State of Louisiana.”
*457 In their application LaSalle sets forth that the need for the additional revenue that would result from the proposed increase is to partly compensate for the anticipated drop in gross revenues for local service from $151,000 to $149,000. They must meet competitive wage scales, which have risen in the area due to the local oil field activity, and provide periodic wage increases to employees who have been with the company for a number of years. The company manager’s salary was to be increased from $8,450 to $10,000, and this increase had in fact become effective at the time of the hearing. Their maintenance program requires an increase in revenue for the addition of two employees and two trucks. The imposition of new recreation and library taxes in the town of Jena and in LaSalle Parish, respectively, has resulted in a substantial increase of ad valorem taxes the telephone company must bear. The costs of materials and supplies have undergone marked increases since the establishment of the rate under which La-Salle now operates, and the company anticipates a need for $8,700 for a fund to defray the cost of moving its lines and facilities to accommodate the widening of certain streets in Jena and Wisner.
LaSalle has borrowed $935,000.00 with interest at 2 per cent per annum from the Rural Electrification Administration, all of which has been prudently invested in telephone facilities. An annual payment of $22,177.27 is due on the principal, plus $15,103.73 in interest or a total of $37,-281.00. A substantial balance of the original amount borrowed remains unpaid.
According to testimony adduced at the hearing, the Commission found that the total capital divided between debt and equity as of September 30, 1959 — the test year— was as follows:
Amount Per Cent
Capital Stock and
Surplus $130,593 14.19
Long Term Debt 789,697 85.81
$920,290 100.00
The net operating income and the rate of return on the claimed net plant rate base is shown to be as follows:
Net
Operating Rate of Period Income Return
12 Mos. Ended 9-30-58 $36,164 4.1%
12 Mos. Ended 9-30-59 (test period) $33,147 3.7%
In contrast to the foregoing, the operating income and rate of return on the net plant rate base for the projected year is shown to be as follows:
Net Operating Rate of Projected Year Income Return
Present rates $26,826 3.0%
Proposed rates 35,396 3.9%
In its opinion, the Commission, in considering the proposed rate increase, adopted the test year as a basis for its determination. The projected year was not considered because the Commission was of the opinion that the sharp decline in the net operating income from the test period to-the projected year “was only partially explained.” Thus the finding based on the test period, that a 3.7 per cent rate of return is just and reasonable fails to recognize the fact that a decline to a 3.0 per cent rate of return will result when the anticipated income and expenditures become effective during the projected year. This decline from the test period to the projected year is made especially significant when the projected year follows the test period as it does in this case.
Some of the increased expenditures which would have the effect of reducing the rate of return in the projected year to 3 per cent were mandatory, such as the payment of increased taxes, increased costs of essential materials, etc. On the other hand, although the other expenditures may not be mandatory, we consider them to be reasonable and justifiable. These include such expenditures as the increase in the manager’s salary, the addition of employees *458 and trucks to the maintenance force to assure continued good service, etc. We are unable to understand wherein the explanation for the decline in the net operating income for the projected year was not properly or satisfactorily explained, as there was no evidence at all tending to contradict or demean the validity of the explanation offered by LaSalle.
Moreover, we note that in its effort to obtain approval of the proposed rate increase and the return of 3.9 per cent, La-Salle argues that the jurisprudence of this court, to the effect that utilities are entitled to a return of 6 per cent on the property rate base, is applicable. See Southwestern States Telephone Company v. Louisiana Public Service Commission, 244 La. 1, 150 So.2d 543 (1963); Southern Bell Telephone & Telegraph Company v. Louisiana Public Service Commission, 239 La. 175, 118 So.2d 372 (1960); Southern Bell Telephone & Telegraph Company v. Louisiana Public Service Commission, 232 La. 446, 94 So.2d 431 (1957); Gulf States Utilities Company v. Louisiana Public Service Commission, 222 La. 132, 62 So.2d 250 (1952). However, LaSalle does not assert that it is entitled to a return of 6 per cent but contends that a return of 3.9 per cent would be fair and reasonable. This, they say, is the rate which its subscribers will bear without creating dissatisfaction and impairing the good relations now enjoyed by LaSalle.
We agree that the principles of law announced in the Southwestern States Telephone Company case and the Southern Bell Telephone & Telegraph Company cases, supra, are applicable, but, like the Commission, we recognize that a return of 6 per cent on the property rate base of La-Salle for either the test year or the projected period would bring about an unacceptable result. In this case under that theory, and based upon the test year, the equity holders would be earning 29.2 per cent on their investment. This high rate of return on the equity capital results from the high debt ratio of this company, which is 85.81 per cent. This unusual debt ratio requires an adjustment of method in the Commission’s approach to the problem in order that the end result of the rate adjustment will be just and reasonable. LSA-Const. of 1921, art. 6, § 4; LSA-R.S. 45:1166, 1167. See also United Gas Pipe Line Company v. Louisiana Public Service Commission, 241 La. 687, 130 So.2d 652 (1961).
Though it is apparent that a 6 per cent return is neither sought nor proper in this case, we are likewise of the opinion that a 3.7 per cent return based upon the test year is not proper. Especially is this true when the return is 3 per cent in the projected year immediately following the test year and when this return is based upon costs which are necessary and proper to permit this company to maintain the high standard of service it had established.
The Commission, feeling that this case presented a novel proposition because of the high debt ratio and the fact that 85 per cent of LaSalle’s capital represents a loan from the Rural Electrification Administration, attempted a comparative study. This study involved an informal survey among the public service commissions of the several states. Replies indicate that they, too, are concerned with this problem. All of the replies indicate a keen appreciation of the fact — with which this court agrees- — • that these companies are not entitled to the same rate of return as a utility which must do its own financing in the open market.
Some of the rate-making bodies canvassed allow slightly more than the 3.7 per cent LaSalle earned during the test period, such as, Oklahoma between 5 and 6 per cent; Wisconsin- — 4.82 per cent; Illinois (one case) — 3.82 per cent; Kentucky — 3.73 and 4 per cent; Michigan — 4⅜4 to 5 per cent; and New Jersey — 4.25 per cent. Examples of those allowing less than 3.7 per cent are California — 3.2 per cent; Missouri — 3⅛ to 3¾ per cent; Arkansas — 3 per cent; Idaho — 3.55 per cent and Tennessee — 2.75 and 3.00 per cent.
*459 The foregoing demonstrates that if we were to approve the 3 per cent rate for LaSalle which results from the use of the rate base calculated on the basis of the projected period, that rate of return, together with that allowed in Tennessee, would be the very lowest. The quality of LaSalle’s service does not warrant this result. On the other hand, to allow the 3.9 per cent rate of return would be in accord with the medium rates allowed in the other states — a factor which points up the reasonableness of the proposed rate, which, in the final analysis, is the real test. Furthermore, a rate of return of 3 per cent would fail to take into consideration La-Salle’s problem of providing service over a large, sparsely populated area.
The Supreme Court of the United States has observed: “[T]he rate of return * * depends upon many circumstances and must be determined by the exercise of a fair and enlightened judgment, having regard to all relevant facts.” Bluefield Water Works & Improvement Company v. Public Service Commission of State of West Virginia, 262 U.S. 679, 43 S.Ct. 675, 67 L.Ed. 1176 (1923). See also United Gas Pipe Line Company v. Louisiana Public Service Commission, 241 La. 687, 130 So.2d 652 (1961).
The Commission has properly recognized heretofore that the return allowance must, among other things, provide a reward for good management. Louisiana Public Service Commission v. Louisiana Power and Light (La.1946, 65 PUR NS 18). All parties concede LaSalle’s efficient management and that fact should be given some consideration here. However, the recognition of this principle, as well as the Commission’s recognition that the proposed rates are just and reasonable, is not enough; the results of the 'Commission’s order must reflect that recognition of these salient factors has received some application in the rate determination. We are of the opinion the order complained of does not.
Under all of the circumstances, the proposed rate increase is considered just and reasonable and should be allowed. Accordingly, the judgment appealed from and the order of the Commission are reversed and set aside; and the Louisiana Public. Service Commission is directed to take; appropriate measures to authorize such increases in the rates and charges of La-Salle Telephone Company, Inc. as were proposed herein.