CALOGERO, Justice.*
The Louisiana Public Service Commission appeals a judgment of the Nineteenth Judicial District Court in favor of Lafourche Telephone Company, Incorporated (LATEL-CO). The commission had denied LATEL-CO a rate increase. The district court reversed that order and approved the increase (and the rates) proposed by LATELCO.[1] For reasons to be expressed hereafter we vacate the judgment of the district court and remand the matter to the Public Service Commission for additional proceedings.
LATELCO is a small, independent telephone company (i. e. not affiliated with the Bell system) licensed to operate within a service area in Jefferson and Lafourche parishes. It serves approximately 7500 customers, 6500 of which are residential. The company, which is family owned and operated (99.8% of its stock and all of its executive offices are held by family members), employs 117 persons.
On June 2,1976 LATELCO applied to the Louisiana Public Service Commission for a rate increase. Without requesting a specific dollar amount, LATELCO asked that the rates and charges be increased so that “the revenues produced will result in a just and reasonable return. . . . ” The application was based on a test year ending April 30,1976. On February 7,1977 the Commission issued an order denying LATELCO’s application giving the following reasons for the denial:
“(1) Lafourche Telephone Company, Inc., is a closely held corporation with five major shareholders holding 99.8% of the stock. These shareholders are all listed as corporate officers in the Company’s 1975 Federal income tax return and such return showed that such officers received salaries totaling over $180,000. In addition, Mr. William Ditto, husband of Tanya Brady Ditto (23.1% equity owner) is listed as the Executive Vice President with a 1975 salary over $50,000.
(2) This Company is somewhat unique in that its Debt/Equity ratio is 9 to 1 and extreme leverage is involved particularly where salaries are extremely generous. The return on equity for the fiscal year ended April 30, 1976 was 25.27% if salaries are attributed to equity. It is the opinion of this Commission that the Company’s return on equity, considering all things, is adequate.”
LATELCO’s application for rehearing was granted, but the Commission on June 21, 1977 affirmed its original denial of the rate increase. LATELCO then appealed the Commission’s order and after proceedings were held, the district court rendered a written opinion.
The district court disagreed and properly so, with the Commission’s seemingly arbitrary inclusion as return on equity ownership of the entire salaries of six stockholders who are also corporate officer-executives, and with the Commission’s unarticu-lated offset of these ostensibly “generous” salaries for a specific return on rate base.
The district court concluded that:
1) The finding of the Commission that all of the salaries, i. e. $230,000, should be attributable to equity earnings was “palpably unfair and in stark contrast with the evidence.” (The trial judge would have found fully earned $180,000, excluding only the full $27,552 annual earnings of the retired co-founder Mrs. Irene Brady and $22,048, half of the earnings of the President and co-founder John Brady, Sr. who retired during the test year.) 2) $180,000 of the executive salaries should properly have been allowed as sal *1176 ary expense in the computation of return on equity,
3) “[A] closely owned family utility such as LATELCO does not require quite the same rate of return on equity as do large utilities which have to compete in the open market for financing,”
4) Small companies “must have some encouragement where the company, as has LATELCO, has demonstrated good management practices and efficiency,”
5) LATELCO’s overall embedded interest on debt has risen sharply in the past few years and it is no longer able to obtain 2% financing from REA,[2]
6) The current cost of money for improvements is 7%,
7) The proposed rates of $11.89 for residential service and $24.29 for business service will prompt a 5.985% return on equity based upon operations ending April 30, 1977 [the test year ended April 30, 1976],
8) 5.985% return is a just rate of return on equity,
9) These increased rates will be compatible with the present rates of South Central Bell, whose service area is immediately adjoining that of LATELCO, at Lockport.
Accordingly the district court approved the proposed rates of LATELCO as submitted.
After granting a rehearing the district court reinstated its original determination and judgment but contended that it had erred in its original written reasons by stating that LATELCO would receive 5.985% return on equity and by declaring that such is a fair and just rate of return on equity. The court declared that it meant to say that the 5.985% figure was in fact the overall rate of return which includes the cost of money and return on equity. The court also recognized that the Commission was correct that under present law plant under construction (or CWIP, construction work in progress) should be excluded from the rate base for the test year, citing South Central Bell v. Louisiana Public Service Commission, 352 So.2d 964 (La.1977) and the district court decision in Gulf States Utility v. Louisiana Public Service Commission, which was affirmed in pertinent part by this Court at 364 So.2d 1266 (La.1978). Nonetheless the court felt it would be grossly unfair to exclude this CWIP from the rate base and from computation of the overall rate of return where the record before the commission indicated that the work in progress had actually been completed and put into operation by April 30, 1977. The court thus persisted in computing the rate of return on a rate base ($13,712,309) which included CWIP.
It is of course true that the orders of the Commission are entitled to great weight and are not to be overturned unless shown to be arbitrary capricious or abusive of authority. South Central Bell Telephone v. Louisiana Public Service Commission, supra; Louisiana Oilfields Carriers Association v. Louisiana Public Service Commission, 281 So.2d 698 (La.1973). Nonetheless the Commission does appear arbitrary in denying LATELCO’s proposed rate increase for the reasons given, particularly inasmuch as most if not all of the corporate executives’ salaries appear to have been earned.
There are, however, equally valid reasons why we do not accept the determination made by the district court. Chief among these reasons are the district court’s improper employment of a rate base including CWIP, and, more significantly, the court’s selection of 5.985% return on rate base, which is excessive.
Although, as we indicated earlier, the district court acknowledged that the cost of CWIP should be excluded from the rate base, the court nevertheless included the cost of construction work in progress during the 1976 test year for the stated reason that inflation and administrative and court delays make test year figures obsolete by the time the rate increase is to be put into effect.[3] Although this Court *1177 and the Commission have recognized that a utility may be entitled to a rate increase because of attrition, this Court has not heretofore accepted the inclusion of impermissible costs in the rate base to offset the effects of inflation and delay. Compare South Central Bell v. Louisiana Public Service Commission, supra.
With respect to the trial court’s selected return on rate base, the very figure, 5.985%, which the district court first stated should be the proper “rate of return on equity,” then stated it was meant to be the fair rate of return on rate base, was first introduced into the case by LATELCO as simply the cost of long term debt excluding outstanding 2% REA financed debt.[4]
If LATELCO is allowed a 5.985% rate of return, the return on equity based on its capital structure as of April 30, 1976 would be 26.65%, as is evident from the following analysis:
Amount Ratio Cost * Return
Long term debt $12,339,310 89.85% 3.65% 3.280%
Equity 1.394.309 10.15% 26.65% 2.705%
Totals $13,733,619 100.00% 5.985%[5]
That a 26.65% return on equity is imper-missibly high, whether for a larger company which raises capital by stock sales on the open market or for a small company like LATELCO which does not, is self evident.
Because Lafourche Telephone Company is a small, independent, family-owned corporation whose capital structure is 89.85% funded by long term debt, over one half of which is 2% REA financing, and whose stockholder equity underwrites only 10.15% of that capital structure, it and companies so funded are simply not entitled to the same rate of return as a utility which must do its own financing in the open market. LaSalle Telephone Company v. Louisiana Public Service Commission, 245 La. 99, 157 So.2d 455 (1963).
Even if LATELCO were allowed the same 10V2% return on equity which was accorded Baton Rouge Waterworks in Baton Rouge Waterworks Company v. Louisiana Public Service Commission, 342 So.2d 609 (La.1977) [note that 10V2% to 11V2% return on equity was allowed in South Central Bell v. Louisiana Public Service Commission, supra] and if the trial court’s determination that $180,000 of the executive salaries should properly be expensed rather than treated as equity return were accepted, the composite return, or return on rate base, would have to be only 4.35% not 5.98%. On that basis, a rate increase of $223,134, not $625,793 or $757,244 would be required to generate additional revenues.[6]
Although it would not be inappropriate for this Court to end this litigation by *1178 determining a proper and reasonable rate of return and fixing allowable rates to LA-TELCO designed to generate a moderate increase in revenues, we are constrained not to do so for several reasons:
1) The case in any event would have to be remanded to the commission to fix the monthly residential and commercial telephone rates necessary to generate whatever additional revenues were to be allowed,
2) Some of the underlying data upon which we would be required to rely in fixing these rates is essentially unverified, see R.S. 45:1194, and
3) The Public Service Commission is better equipped than this Court to make the determination as to the rate structure which should be placed in effect.

Decree

For these reasons the judgment of the district court is vacated and set aside and the case remanded to the Louisiana Public Service Commission for further proceedings in connection with Lafourche Telephone Company’s application for a rate increase.
JUDGMENT OF THE DISTRICT COURT VACATED; CASE REMANDED TO THE LOUISIANA PUBLIC SERVICE COMMISSION.
SUMMERS, J., concurs.

 Blanche, J., not participating.

. The amount of the rate increase approved by the district court is not clear. The original judgment and the judgment on rehearing simply approved “the proposed rates” of LATEL-CO. The reasons for judgment approved proposed rates — $11.89 per month residential service and $24.29 business service — which when applied to a given set of subscriber figures result according to plaintiffs brief in the trial court in projected additional revenues of $625,-793. Yet those same reasons also approved a 5.985% overall return on a $13,712,309 rate base, an ostensible increase of $757,244 (the latter figure results from multiplying the rate base times 5.985 less actual net income of April 30, 1977, the projected year which the trial court applied, with adjustment for the tax factor).

. Rural Electrification Administration, a federal agency within the Department of Agriculture.

. In brief the Commission contends that the district court also included in the rate base deferred income taxes and customer deposits and argues that because these funds are not supplied by the investors, the shareholders are not entitled to earn a return on them. Because we vacate the district court judgment and re *1177 mand this case to the Commission, we need not pass on this issue.

 [“Cost” as used here means required investment return.]

. There is no reason to exclude the 2% debt. It exists, and represents more than one-half of the outstanding long term debt of the company. Including the 2% debt the cost of all debt is 3.65%.

. This analysis is based on the capital structure of LATELCO presented by the Public Service Commission in its original brief. For an explanation of this formula and the calculations involved in determining utilities’ revenue requirements see the discussion under “elements of rate making” in South Central Bell Telephone v. Louisiana Public Service Commission, supra at p. 967 et seq.

.Following a court request at oral argument the parties made a joint submission showing revenue requirements necessary to produce 10‘/2% on equity which included the following pertinent information (note that employed here are 1) 10.5% return on equity, 2) a net rate base which excludes construction work in progress (CWIP), customer deposits and deferred income taxes, 3) a net rate base from the test year (ending April 30, 1976) rather than a projected year (ending April 30, 1977) and 4) all but $49,600 of the $230,000 in executive salaries are allowed as proper expenses):
*1178 Amount Ratio Cost Composite Return
$12,339,310 89.85% 3.65% Long term debt 3.28%
1.394.309 10,15% 10.50% $13,733,619 100.00% Equity Totals L-07.% 4.35%
April 30. 1976
Net Rate Base $11,073,898
Indicated Return 4,3.5%,
Net Operating Income $ 481,715
Actual net income before adjustment for excessive salaries $ 321,106
Add: “Excessive” salaries 49.600
Adjusted Net Operating Income $ 370,706
Deficiency After Tax $ 111,009
Gross Deficiency Before Tax $ 223,134