HAWTHORNE, Justice.
This appeal presents the question of whether the district court erred in reversing an order or ruling of the Louisiana Public Service Commission which rejected a complaint against Southern Bell Telephone and Telegraph Company filed by Moosa Memorial Hospital, Hospital Service District No. 1 of St. Landry Parish, as to charges for patient telephone service.
About the time the complainant hospital was built, it was provided with telephone service by means of a private exchange switchboard or private branch exchange to service its administrative and its patient telephones. The telephone company ran its lines from the hospital switchboard in conduits constructed by the hospital to administrative telephones which were permanently installed telephone instruments. The telephone lines similarly installed by the company to the patients’ rooms, 22 rooms in the beginning, terminated in jacks in these rooms to which portable telephone instruments could be plugged. The hospital ordered and received from the telephone company 10 portable telephones for use with the 22 jacks in the patients’ rooms, and *213 for some time was charged 10 x $1.75 each month for the patients’ services on the basis of these 10 portable telephone instruments. In 1963 the hospital, which was contemplating increasing the number of patients’ rooms, consulted the telephone company about additional facilities needed to service the added rooms. At this time the telephone company notified the hospital that the charge it had been previously making based on the number of portable telephones in use was in error, and that a charge of $1.75 each month should have been made on the basis of each line terminating in a jack in a patient’s room, and not on the number of portable telephones in the hospital’s possession.[1] Rather than acquiesce in this proposed charge the hospital filed the complaint against the telephone company with the Louisiana Public Service Commission.[2]
The Louisiana Public Service Commission under Article 6, Section 4, of the Louisiana Constitution of 1921 exercises all necessary power and authority to fix reasonable and just fares, tolls, and charges for the commodities furnished and services rendered by the telephone company. The telephone company has filed with the commission for use in Louisiana a tariff of charges setting forth its tolls and charges for commodities furnished and services rendered, designated as “General Exchange Tariff”. These tolls and charges have been made effective by order of the Public Service Commission, and are the charges which the telephone company is required to make.
The general exchange tariff on file with the commission reads in pertinent part as follows:
“TELEPHONE STATION
A telephone instrument, consisting of a transmitter, receiver and associated apparatus, so connected as to permit of sending and receiving telephone messages.
* * * * * * “PRIVATE BRANCH EXCHANGE SERVICE
4» 4» 4s sf»
A. 9. Hospital Branch Exchange Service is the only class of service available at hospitals for the joint use of the management and patients. * * *
jfc ?fc :|í j{í
D. 3. The following rates apply to the Manual Service arrangement:
Monthly
Rate
c. Stations, each:
For Management use........$ 1.85
For Patients use............ 1.75”
*215 After a hearing on the hospital’s complaint the commission found that the telephone company was charging according to its tariff hut found there was no evidence to support the reasonableness of its charge, and accordingly ordered that the hospital be charged for patients’ services on the basis of the number of portable telephone instruments. On application of the telephone company the commission granted a rehearing. On rehearing the commission found again that the telephone company was charging according to its tariff, but reversed its position on first hearing that the charge was unreasonable, evidently because no evidence was offered by the complainant, which had the burden to establish this fact. Accordingly the commission revoked is previous order and ordered that the complaint of the hospital be rejected and the proceedings dismissed. The complainant appealed by filing suit in the district court. That court reversed the order of the commission and ordered the telephone company to charge the hospital $1.75 per month per station, the number of stations to be determined by the number of portable telephone instruments accepted by and delivered to the hospital. From this judgment of the district court the telephone company and the commission have appealed.
The evidence in the instant case discloses that situated in the complainant hospital is a private exchange switchboard or what is called a private branch exchange.[3] To provide this private branch exchange service the telephone company has installed, in conduits constructed by the hospital at the time it was built, the company’s own telephone lines from the switchboard to the patients’ rooms. Under this circumstance the hospital is entitled to a permanent telephone instrument in each patient’s room, and for this complete installation in each room a monthly service charge of $1.75 is made pursuant to the company’s tariff charges on file with the commission. That such a charge is authorized under this general tariff cannot be denied. If, however, the subscriber does not desire a permanent telephone instrument in a patient’s room, the company will provide a portable telephone which can be plugged into a jack in the patient’s room. If the subscriber wishes to use portable telephones in this manner, the telephone company will famish these instruments without any additional monthly service charge to the subscriber; but whether permanent telephones or portable telephones are used in the patients’ rooms, the company levies a charge in either case of $1.75 per month. With this installation the patient is enabled to make a private tele *217 phone conversation to any other telephone in the hospital or to any outside station serviced by the company. To afford such service the telephone company has to provide a line from the switchboard to each patient’s room, and it must provide also a telephone instrument, whether permanent or portable, for each room. The hospital here refused to accept more than 10 telephones, all portable, for the patients’ rooms, although the company offered and stands ready to furnish one for each room with no additional monthly service charge.
The record discloses that the company services many other hospitals in Louisiana with the same type of installation and service provided for the complainant here, for which the company makes the identical charge it seeks from the complainant here. Southern Bell’s commercial engineer for Louisiana testified that this is the way the company has charged during the 38 years of his employment with the company.
The commission concluded on rehearing that the charge proposed by the telephone company was in accordance with tariff provisions, and in reaching this conclusion the commission stated among other things:
“It now appears to us that the fact that the hospital does not accept an instrument for each of these jacks is a matter within the hospital’s discretion. If they do not accept such an instrument, to which the telephone company concedes they are entitled, the telephone company is saved the investment in the instrument but still has its investment in the private line from the jack to the switchboard and there is still the availability of private telephone conversations between each individual room and any other station served by the company.
“It is true that in a private residence the company will install as many jacks as the subscriber wishes and if the subscriber desires only one portable instrument, he will be charged for only one extension; but in that case each jack is on the same line and only one conversation at a time can be conducted from subscriber’s premises to other stations of the company. The service rendered to a private residence is therefore, not analogous to the service rendered the hospital. The hospital is so wired that in all the existing rooms of the hospital all telephones could be used at the same time if the complainant hospital would accept without any additional charge a telephone instrument to be inserted in each jack, which the complainant hospital has declined 'to do. ‘
“ * * * • '
“In reviewing our past order it appears to us that we did not fully evaluate the invest- ' ment which the company must make in rendering the service which the hospital demands, or the fact that' the service being rendered in the hospital is substantially dif- . ferent from that being rendered, in, private residences where the jacks arc .installed in *219 the various rooms but all using the same line. * * * ”
The only issue presented before this court is whether the telephone company is correctly applying the charge here involved pursuant to the charges on file with the commission. The general exchange tariff permits the telephone company to charge a monthly rate for each station for patients’ use of $1.75.
The complainant takes the position that because it has refused to accept a telephone for each of the 22 patients’ rooms offered by the telephone company and has chosen to accept only 10 portable telephones, under the tariff provisions it should be properly charged for only 10 stations, or 10 x $1.75 monthly.
On the other hand, it is the contention of the telephone company that the purpose of running lines provided by it from the private exchange switchboard to each of the 22 patients’ rooms was to provide the subscriber with a station for each line. The company concedes that when the line terminates in a jack, the station is not complete until the subscriber inserts into the jack a portable telephone instrument with a cord ending in a plug, all of which is also provided by the company.
The testimony adduced before the commission, however, makes it perfectly clear that when the subscriber plugs a portable telephone into a jack at the end of a line running from the switchboard, a station is established, within the definition on file before the commission of “Telephone Station”, thus: “A telephone instrument consisting of a transmitter, receiver and associated apparatus, so connected as to permit of sending and receiving telephone messages.”
The private branch exchange of the hospital in this case, therefore, was set up so as to provide the subscriber with 22 stations, one for each of the lines running from the switchboard and terminating in jacks which could be activated into stations at the will of the subscriber. The essence of the argument of the hospital to defeat the charge for 22 stations under these circumstances is that notwithstanding the telephone company has installed 22 of its own lines to provide station service, the hospital can reduce the number of stations by refusing to accept a telephone instrument for each patient’s room. The question is: Can the hospital by refusing to accept a portable instrument for each line from the switchboard effectively reduce the number of patients’ stations in the hospital to the number of telephone instruments which it accepts and for which it can be charged on a station basis, under the tariff?
It is evident that the hospital’s acceptance of fewer telephones than there are lines means only that the hospital by transporting these portable instruments from line *221 to line can obtain the service it requires from 22 stations with fewer instruments than there are lines and jacks, but we do not think it follows that the hospital can by transferring the portable ’phones as its service demands require reduce the number of stations.
The following example will illustrate: If the hospital plugs the same portable instrument into Line No. 1 on one day and into Line No. 2 on the next day, has it had the ■service of the same station on both days? No, it has had the service of two stations. More dramatically illustrating that the number of telephone instruments used cannot alone be determinative of the number of stations would be the case of a large hospital with the company’s lines from the switchboard to, say, 100 rooms. Could such a hospital by accepting and using only one portable telephone contend that it should be ■charged for only one station, or $1.75 per month? Moreover, in the instant case if the complainant hospital plugged the 10 portable telephones in Rooms 1 through 10 for one day and the next day plugged the same 10 ’phones in Rooms 11 through 20, has it had the use and service of 10 stations ■or of 20 stations? The answer is self-evident. It is therefore obvious that a telephone instrument alone cannot constitute a station, and that a charge for stations based on the number of telephone instruments in the possession of the subscriber would not be in accordance with the general exchange tariff.
The district judge, who reversed the commission, evidently did not fully understand the nature of the service provided by a private branch exchange, as explained above, which the commission with its peculiar knowledge and experience in such matters well understood; for the judge was of the erroneous view that the telephone company was charging the hospital per line and that the lines had been installed at the hospital’s expense and were owned by it.
 In the instant case the burden was on the complainant hospital to show that the commission erred in finding and concluding that “the charge proposed by the telephone company was in accordance with its proposed tariff”. Texas & P. Ry. Co. v. Railroad Commission of Louisiana, 127 La. 387, 53 So. 660; see Gulf States Utilities Co. v. Louisiana Public Service Commission, 222 La. 132, 62 So.2d 250. This it failed to do. Moreover, we are convinced from our study of the record that the commission under the facts and circumstances of this case reached the right conclusion.
For the reasons assigned the judgment of the district court is annulled and set aside, and the order of the commission rejecting the complaint and dismissing the proceedings is reinstated. The complainant is to pay all costs of these proceedings.

. Originally tlie telephone company proposed to make the corrected charge retroactive, but it later abandoned this position, and tli e issue is over only future charges.

. The telephone company, of course, makes other charges to the hospital for installation, equipment, and services according to its general exchange tariff on file with the commission, but there is no dispute as to the correctness of these other charges, and they are not at issue here.

. For explanation and description of the service rendered by a private branch exchange, see Re New York Telephone Co., P.U.R.1923B,- pp. 545, 652; Spurr, Guiding Principles of Public Service Regulation, Ch. LXXVI, Telephone Rates, sec. 20 Private Branch Service, p. 788.